THE CITY SAVINGS BANK *vs.* GEORGE HOPSON AND OTHERS.

A negotiable note payable in six months and endorsed by the payees was delivered by the latter to a savings bank as collateral security for a loan previously made, with the following indorsement upon it, signed by the indorsers:—"We hereby acknowledge the receipt of notice of protest on the within note." Held that the word "protest" included all acts necessary to hold indorsers, and that the legal effect of the acknowledgment was to release the bank from all obligation to make demand of payment or give notice of non-payment.

City Savings Bank v. Hopson.

Another note delivered to the savings bank at the same time and for the same purpose, was on demand and indorsed as follows:—"For value received we guarantee the within note till paid." Held to be an absolute and unqualified contract of the signers of the guarantee, to pay the note if the maker did not, without demand on the maker or notice of non-payment.

The maker of the note, a manufacturing corporation of which the indorsers and guarantors were stockholders, was solvent at the time the notes were given, and remained so for a year and a half from that time, but then became insolvent and so remained. The savings bank had taken no legal steps for the collection of the notes, and the other parties had not requested it to do so, or taken any measures themselves for their collection. Held that the savings bank was not to be charged with the loss.

[Argued October 28th—decided December 14th, 1885.]

ACTION upon a note; brought to the Superior Court. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*J. S. Beach* and *D. F. Hollister*, for the plaintiff.

*A. S. Treat* and *C. Sherwood*, for the defendants.

PARDEE, J. On January 13th, 1876, the defendants Hopson, Wilmot, Clarke and Waller, for value received executed and delivered to the plaintiff their joint and several promissory note for $20,700, payable on demand, with interest semi-annually on the first days of January and July in each year in advance. In pursuance of an agreement then made, on April 4th, 1876, the plaintiff received from Clarke and Wilmot, by way of collateral security for the note, two notes, one for $4,950, payable on demand, the other for $5,050, payable six months from date, both dated March 3d, 1876, made by the Ætna Spring & Axle Company to the order of Wilmot and Clarke, indorsed by the payees, guaranteed by O. P. Lewis and William H. Wilson. Partial payment of the note for $20,700 has been made. The suit is for the unpaid balance.

It is the claim of the defendants that when the collateral notes matured the plaintiff neither made demand upon the

maker, nor notified the indorsers, nor enforced payment; that then all parties to the notes were solvent and could have been compelled to pay; and that the amount due upon the notes having been lost by the negligence of the plaintiff, the law indorses this amount as a payment upon the principal note. But when the note for $5,050 was delivered to the plaintiff, there was written upon it as follows:—"I hereby acknowledge the receipt of notice of protest on the within note;" and this was signed by all of the indorsers thereon. Herein the word "protest" includes all acts necessary to hold indorsers, and the legal effect of the acknowledgment is to release the plaintiff from any obligation to make demand, or give notice. 2 Daniel on Neg. Ins., §§ 1094–5; *Emery* v. *Hobson*, 62 Maine, 578; *Woodman* v. *Thurston*, 8 Cush., 157.

Upon the note for $4,950 there was written as follows:— "For value received we guarantee the within note until paid;" and this was signed by Lewis, Wilson, Clarke and Wilmot, the only names upon the note other than that of the maker. This was an absolute and unqualified contract by each of the signers to pay the note if the maker did not. Upon non-payment at maturity it became and has since continued to be their duty to go to the holder and pay it, and this without demand or notice. *Breed* v. *Hillhouse*, 7 Conn., 523.

It results, therefore, that no party to either note was released from liability thereon by reason of any omission to act on the part of the plaintiff.

Again, the receipt given by the plaintiff to Wilmot and Clarke, setting forth the terms upon which it received the notes in question, covered other notes by the same maker, some having the same, others different, indorsers. In this receipt the plaintiff is careful to say that by the acceptance of the notes as collateral security there is to be "no release from the joint and several note; all are to be held." This provision is without force unless it is to be understood as meaning that the plaintiff in receiving them should not jeopardize its hold upon the makers of the principal note by

coming under any obligation to demand payment, notify indorsers or commence suit. Only this, that it should not act in intentional bad faith nor hinder the pledgors in enforcing payment. The contract has been interpreted by the act of the other parties to it. As to some of the other notes covered by it, they took the initiative in, and assumed the control and expense of, legal proceedings to compel payment. With knowledge during more than a year that the notes had matured and were unpaid, that the maker was solvent and had sufficient personal property exposed to attachment, they made no demand upon the plaintiff, either that it should commence suit or permit them to do so; and there was no evidence tending to show that it was not during that time ready and willing to allow them to enforce payment. Therefore, by the terms of reception of the collaterals, it was under no legal obligation, at its own expense, without request, to enforce payment.

Again; the finding is, that as between the defendants themselves it was the duty of each to pay one fourth of the principal note. Upon the collateral notes Clarke and Wilmot were first, Lewis and Wilson second indorsers. If the plaintiff had enforced payment against the latter, they in turn would have enforced it against the former, and if these last had in this manner paid more than their half of the principal note, they would have recouped from Hopson and Waller. The record does not therefore make it certain that the inaction of the plaintiff in this regard has imposed any additional burden upon either of the defendants.

Moreover, Wilmot, Wilson and Clarke, three of the defendants, were stockholders of the Ætna Spring & Axle Company during the years 1876 and 1877; Wilmot and Wilson were directors; Wilmot was first its treasurer and then its president; and Wilson was its treasurer during a part of that time. All of the defendants knew, at the maturity of the notes and ever afterward, that they were unpaid. After maturity, Hopson and Wilmot informed Middlebrook, the plaintiff's treasurer, that Wilmot had heard that

the personal property of the Spring & Axle Company was being carried off and disposed of, and asked him if something could not be done to collect the note. It is found that this was not intended or understood by any of them to be a demand to proceed to collection, but only an expression of desire on the part of Hopson and Wilmot that something might be done by way of collection. The plaintiff did not attempt to force payment by legal process.

Up to about December 1st, 1867, the Spring & Axle Company continued solvent and able to pay the notes, and up to about April 1st, 1867, had personal property sufficient in amount to pay them exposed to attachment. It became wholly insolvent about December 1st, 1877. At, and for a considerable time after, the maturity of the notes, O. P. Lewis and Wilson were the principal owners of the stock of the Spring & Axle Company, and at the maturity of the notes that stock was worth forty dollars per share.

The defendants knew that the notes were not paid at maturity, and that the plaintiff did not then resort to legal process. During the year following they refrained from requesting it to enforce them, and neglected to avail themselves of their own right to do it, although enforcing similar notes under the same pledge. There was no evidence that the plaintiff was not at all times willing to permit them to enforce these notes; and it was at all times ready to deliver the notes to them upon payment of the principal note, so far forth as that note was concerned. Even if delay should be imputed to the plaintiff in not commencing suit at maturity, there remained to the defendants ample knowledge, power and opportunity, and with these went the legal duty, to make the delay harmless and protect themselves from any loss. Not availing themselves of these the negligence became their own.

The Superior Court is advised to render judgment for the plaintiff for the unpaid balance of the note for $20,700.

In this opinion the other judges concurred.