W. R. CLARK and SAMUEL HENERY, copartners under the firm name of CLARK & HENERY, *v.* H. HACKFELD & COMPANY, Limited, and CASTLE & COOKE, Limited.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 28, 1904.          DECIDED AUGUST 2, 1904.

FREAR, C.J., HATCH, J. AND GEAR, CIRCUIT JUDGE, IN PLACE OF HARTWELL, J.

CONTRACT—GUARANTY—*What constitutes absolute guaranty.*

A written instrument addressed to a firm of contractors, and signed by the respective agents of two corporations, which recites that the agents knowing that the directors of the corporation "have this day pledged the above companies to pay you $26,000 upon the opening of Pearl Harbor, by the completion by you, and the acceptance by the United States Government of a channel into said Pearl Harbor of 200 feet wide at the bottom and 30 feet deep, do hereby guarantee said payment as per resolutions passed, cop-

ies of which are in your possession," is an absolute and independent undertaking on the part of those signing it to make the payment upon the contingency stated, and not a collateral contract of guaranty dependent for its validity upon the existence of another contract between the corporations and the contractors.

ID—ID—*acceptance of offer.*

The action of the contractors in such a case in entering into a contract for the dredging of Pearl Harbor, and their completion of the work to the satisfaction of the United States Government, which accepted the work, was sufficient acceptance of the guaranty contained in the written instrument signed by the defendants, and is sufficient to support a finding of an acceptance of the offer.

ID—ID—*consideration—assumption of obligation.*

Where the contractors, after the receipt of such writing from the defendants, entered into a contract with the United States Government to dredge Pearl Harbor, relying upon the undertaking of the defendants to pay them the sum of $26,000 in addition to the amount of their bid, the entering into such contract with the United States Government constituted a valuable consideration for the promise of the defendants to pay them the $26,000 additional, regardless of whether or not the defendants would be benefited thereby.

ID—ID—*satisfaction with work.*

The fact that the resolution of the directors of one of the companies pledged the company to pay part of the $26,000, provided that the agents of the company "are satisfied that the opening of the channel to Pearl Harbor will open the same to commerce," and that the contract of the defendants was to "guarantee said payment as per resolutions passed," did not render it necessary, in order to make such agents liable on their contract, for the contractors to prove that the agents were satisfied after the work was completed, that it opened the harbor to commerce, as the action of the agents in signing the contract amounted to an unequivocal expression of satisfaction on their part that the opening of the channel, according to the specifications, would open the same to commerce.

ID—ID—*meaning of "guarantee."*

While due weight should be given to the use of the word "guarantee" in an instrument, its use is not, by itself, conclusive as to the legal effect of the instrument; as it may be used to express an original undertaking, and a qualified guarantee may be expressed even without its use.

Id—*offer—notice of acceptance—evidence—actual knowledge.*

Notice of the acceptance of an offer need not be proven by direct testimony but may be inferred, and may come from any source. Knowledge that the offer has been accepted is equivalent to notice when notice is necessary.

Id—*consideration—what constitutes—evidence.*

Consideration for a contract involves the surrender of a legal right or the incurrance of a legal obligation. It need not be expressed in the contract but may be shown by evidence *aliunde.*

OPINION OF THE COURT BY HATCH, J.

This is an action of assumpsit, brought by the plaintiffs, Clark & Henery, against H. Hackfeld & Company, Limited, and Castle & Cooke, Limited, upon a written undertaking to guarantee the payment to the plaintiffs of the sum of $26,000 upon their completion of certain dredging work, and the acceptance of the same by the United States Government. The United States, through the appropriate office of the Engineer Corps of the Army, had called for tenders for dredging a channel through the bar at the entrance to Pearl Harbor in the island of Oahu. The amount of the appropriation available not appearing to be sufficient to pay the cost of the undertaking, and it appearing that the opportunity to have this harbor opened might be lost for a long and indefinite period, if the appropriation then made available by Congress was not expended at that time, private parties interested in the work, took steps to induce bidders to undertake a contract. The directors of the Ewa Plantation Company, Limited, whose lands are situated in the Pearl Harbor basin, bordering upon, or accessible to the lagoon, passed the following resolutions:

"Whereas, the United States Government has advertised for tenders to open Pearl Harbor, and

"Whereas, Messrs. Clark & Henery, a reliable firm of contractors, will agree to put in a bid to the United States Government to complete this work as above for the sum of $94,000.00 provided they are guaranteed the additional $26,000.00

"Therefore Be It Resolved, that we, the Directors of the Ewa Plantation Company, do hereby pledge our Company to pay

its pro rata of the aforesaid $26,000.00, upon the completion and acceptance of the work by the United States Government, this Company's pro rata to be determined according to the joint interests of all plantations that may join in the guarantee."

The directors of the Oahu Sugar Company, Limited, whose lands are similarly located, passed the following resolutions:

"Whereas, the United States Government has advertised for tenders to open Pearl Harbor, and

"Whereas, the appropriation available is only $94,000.00 and the necessary work to be performed to make the channel 200 feet wide at the bottom and 30 feet deep will require an expenditure of $120,000.00, or $26,000.00 in excess of the appropriation available, and

"Whereas, Messrs. Clark & Henery, a reliable firm of contractors, will agree to put in a bid to the United States Government to complete this work as above for the sum of $94,000.00 provided they are guaranteed the additional $26,000.00

"Therefore Be It Resolved, that we, the Directors of the Oahu Sugar Company, do hereby pledge our Company to pay its pro rata of the aforesaid $26,000.00, upon the completion and acceptance of the work by the United States Government, this company's pro rata to be determined according to the joint interests of all plantations that may join in this guarantee.

"Provided this sum does not exceed $\frac{1}{3}$ of $26,000.00, viz: $8,666.66

"And Provided that the agents of the Company Messrs. H. Hackfeld & Company, Limited, are satisfied that the opening of the channel to Pearl Harbor will open the same to commerce."

The defendants thereupon entered into the following written obligation which they delivere dto the plaintiffs.

"Honolulu, H. I., Feb. 12th, 1901.
"Messrs. Clark & Henery,
                    City.

Dear Sirs:—

We, the undersigned, agents of the Ewa Plantation Co. and the Oahu Sugar Co., knowing that the directors of the above Companies have this day pledged the above companies to pay you $26,000.00 upon the opening of Pearl Harbor, by the completion by you and the acceptance by the United States Government of a channel into said Pearl Harbor of 200 ft. wide at

the bottom and 30 ft. deep, do hereby guarantee said payment as per resolutions passed, copies of which are in your possession.

Yours very truly,

Castle & Cooke,

J. B. Atherton,
President.

H. Hackfeld & Co., Limited,
Paul Isenberg,
President."

The plaintiffs, relying upon the foregoing assurances, put in a tender and obtained a contract for dredging a channel as aforesaid. This contract they faithfully carried out, to the satisfaction of the Federal officials, who accepted the work and paid the contract price. Demand was then made by the plaintiffs upon the defendants for the payment of said sum of $26,000. Not obtaining payment, action was brought. The defendant H. Hackfeld & Company, Limited, answered, filing a general denial. The defendant Castle & Cooke, Limited, answered confessing judgment for, and paying into court, two thirds of the sum sued for, with interest, costs and attorney's fees, and disclaiming any release as to its joint liability for the balance. Jury was waived. The court, on the trial of the cause, found that all of the material allegations set forth in the complaint had been established by competent testimony, and entered judgment for the plaintiffs and against the defendants for the remaining one third of the $26,000 claimed, to wit: $8,666.66 with interest, costs and attorney's fees. The defendant Hackfeld & Co. excepted to the findings as being contrary to law and the evidence, moved for a new trial, and upon its motion being overruled, brought the case here on bill of exceptions.

The numerous questions raised by the bill of exceptions were at the argument grouped by the defendant under three heads, which as set out in defendant's brief are as follows:

1. Are H. Hackfeld & Company, Limited, liable under their contract of guaranty, assuming that all of the conditions thereof have been fulfilled?

2. Have the conditions in fact been fulfilled?

3.   Is Pearl Harbor open to commerce?

1.   The construction of the written obligation sued upon is at the foundation of plaintiffs' case. Is it, as contended by defendant, a pure contract of guaranty, dependent for its validity upon the existence of another contract between the plaintiffs and the alleged principals, or is it an absolute and independent undertaking on the part of the defendants who signed it to make a definite payment on a contingency stated. As tending against the construction claimed by the defendant it should be observed that the undertaking in question is absolute in form. It is not even made conditional upon the default of the Ewa Plantation Company and the Oahu Sugar Company. It is a positive undertaking to "Guarantee said payment" upon the completion of the work under contemplation. The only contingency stated as a prerequisite to the liability of the defendants is that the work should be completed in a stated manner and to the satisfaction of certain persons. This is a very different obligation from that which would result if the letter sued on had set out a definite contract between the plantation companies and plaintiffs, or had referred to such a contract by terms sufficiently definite to iden-. tify it, and had then proceeded to guarantee that such contract was a good and enforceable contract, and that defendants would make good any loss resulting to plaintiff, up to the amount named, in case plaintiffs should fail to collect from the principals. We are not at liberty to so radically change the obligation signed by defendants as to incorporate into it the above terms and qualifications. Yet it would be necessary to read them into the contract in order to construe it in the manner contended for by defendant. To constitute the contract a guaranty of another prior contract between the principals and the plaintiffs there must be harmony as to the subject matter and amount involved. What contract could have existed between the plantations and the plaintiffs by virtue of the resolutions? The resolutions show that in the case of the Ewa Plantation Company, Limited, authority was given to pledge said company for its pro rata of $26,000; and in the case of the Oahu Sugar Company,

Limited, the limit of one third of $26,000 was definitely expressed. If contracts had been made with the plaintiffs in pursuance of these resolutions we should have had two several contracts for limited amounts on the one hand, and the defendants' joint obligation for $26,000 on the other. Manifestly the latter obligation would be concurrent and not subsidiary and collateral to the others. But if such primary contracts never in fact were made, and there is no showing that they ever were, it becomes a matter of demonstration that the contract sued on was an original undertaking, if it has any validity at all. Defendant not only admits that no such contracts ever existed, but argues that as the principal was never bound the surety can not be. This would be very well as to the discharge of a principal; but as applied to this case the absence of an original undertaking between the alleged principal and the plaintiffs is of itself quite persuasive as to the construction to be put on the defendants' contract, viz: that it is an original contract, and the only question remaining would be, has it the necessary elements to render it good in law as an independent contract. This will be discussed later. Defendant contends that the defendants' contract was "a pure contract of guaranty incapable of any other construction, and that it is clearly not an independent promise as plaintiffs contend." By this we presume the defendant means a collateral contract of guaranty, which would call for notice of default on the part of the principal, and action against the principal, before the guarantors could be called upon to make good their guaranty.

One of the recognized tests to distinguish an absolute guaranty from a collateral one is whether the contract definitely guarantees a payment, as distinguished from a course of conduct by another; or that a written instrument is of a given character, or has a given value. The following are examples of undertakings held to be absolute:

"For value received we guarantee the within note until paid", *City Sav. Bank v. Hopson,* 53 Conn. 453.

"We sign the above note for security for *payment* thereof,

which we hereby guarantee for a valuable consideration received," *Beardsley v. Hawes,* 71 Conn. 39.

An example of a conditional guaranty is, a guaranty that a note is "good and collectible," *Bull v. Bliss,* 30 Vt. 127. In *Woodstock Bank v. Downer,* 27 Vt. 539, the language was "I guarantee the said note is good, and the payment of the same." The court says: "Though the guaranty that the note was good, standing alone, might have been but a conditional promise, yet when it is added "and the payment of the same", it evidently becomes an absolute promise. It is a promise that the makers will pay the note according to its tenor; no notice then that the makers had not paid the note was necessary." In the case at bar it is payment which is guaranteed.

As to the use of the word "guarantee" it may be observed that, while due weight must be given to the fact of its use, the word by itself is not conclusive as to the legal effect of the instrument. A qualified guaranty may be expressed without the use of the word "guaranty" at all. So on the other hand "guaranty" may be used to express an original undertaking. Two instances occur in the resolutions of the plantation companies in this case of non-technical use of the word guaranty. In the last preamble both companies set out that Messrs. Clark & Henery will agree to undertake the work, "provided they are *guaranteed* the additional $26,000." and at the end of the first resolution the language used is, the "pro rata to be determined according to the joint interests of all plantations that may join in the guarantee." Yet it is not contended that the plantations were acting as sureties of another. There is no reason to suppose that the word "guarantee" is used in the defendants' contract in a sense different from that in which it is used in the resolutions. If used in the same sense the legal effect of defendants' guaranty would be this: Defendants, after reciting certain facts of which they had knowledge (the fact that Oahu Sugar Company, Limited, and Ewa Plantation Company, Limited, had this day pledged themselves to pay plaintiffs $26,000 upon the opening of Pearl Harbor by the completion by plaintiffs and the accept-

ance by the United States Government of a channel into said Pearl Harbor 200 feet wide at the bottom and 30 feet deep) say to plaintiffs we (also) guarantee the payment of said sum to you. This would amount to a concurrent, not a subsidiary contract. In *Hilt v. Smith,* 21 How. 283, the word guaranty is construed as follows: "although the term 'guaranty' is usually applied to a collateral undertaking to pay the debt of another, yet when taken in connection with the other terms of the instrument, this is (in this case) clearly an original, independent contract. If it had been under seal the word *"covenant"* would have been the technical synonym for the word 'guaranty' as here used." In this case the plaintiff sold his land to a railroad company for shares of stock on the guaranty of defendants that the shares would be worth par in three years from date; and on the further guaranty, that if not then worth par, the railroad company should then make up to him, or pay him, whatever sum the stock should be worth less than par. It was held that the conditions of the contract required no previous suit to be instituted against any one as principal debtor. We consider this case conclusive authority in support of the construction which we place upon the writing sued upon; namely, that it is an original and independent contract.

Is the contract sued on good in law as an independent contract? It is objected first that no proof was made of the acceptance of the guaranty contained in defendants' letter. It is doubtful if any notice is required in a case like the present even if the contract is held to be a guaranty. This is not such a case as would call for notice of acceptance by the custom of merchants, as when advances proposed to be made to a trader are guaranteed. In the case of unilateral contracts the performance of the act specified in the offer as the consideration makes the promise binding. Notice of acceptance is generally unnecessary. Harriman on Contracts, §149. In *Bascom v. Smith,* 164 Mass. 61, speaking of the case of the offer of a promise for an act the court says: "Ordinarily there is no occasion to notify the offerer of the acceptance of such an offer, for *the doing of*

*the act is a sufficient acceptance,* and the promisor knows that he is bound when he sees that action has been taken on the faith of his offer. But if the act is of such a kind that knowledge of it will not quickly come to the promisor, the promisee is bound to give him notice of his acceptance within a reasonable time *after doing that which constitutes the acceptance."*

In the· case above given as an example, the guaranty of a trader's account, the reason for notice of acceptance is plain. The relations would be likely to extend over a long period of time and it would be only reasonable that the guarantor should know whether or not such an obligation has become a fact.

Notice of acceptance need not be proved by direct testimony but may be inferred. "It may have come from the plaintiffs, or the makers of the note, or from other source", *Woodstock Bank v. Downer,* 27 Vt. 539. Knowledge that the offer has been accepted is equivalent to notice, when notice is necessary. *Barnes Cycle Co. v. Reed,* 91 Fed. 481. We think the evidence supports the finding upon this point.

It is next urged that no consideration has been shown for the contract. "Consideration involves the surrender of a legal right or the incurrence of a legal obligation", Harriman, Cont. §106. It is not necessary that the consideration should be set out in the contract. *Cummings v. Dennett,* 26 Me. 397. It may be shown by the proofs to exist. We think the evidence amply justifies the finding of a consideration, which must have been found to support the decision of the court below. After the receipt of defendants' letter, and in consequence of it, which is a fair inference from all the facts shown, plaintiffs incurred a very onerous legal obligation: to wit, they entered into a contract with the United States to dredge the bar at the entrance to Pearl Harbor in accordance with the specifications prepared by the Army Engineer in charge. The facts recited in the preamble of the resolutions of the directors of the plantation companies, which defendants made a part of their contract, show that the work was undertaken by plaintiffs in consequence of the undertaking to pay the plaintiffs the sum of $26,000 in addition to

the amount of their bid.  The contract entered into by plaintiffs constituted a valuable consideration which fully supported defendants' promise.  What induced defendants to make the promise, and what value, if any, plaintiffs' work might prove to defendants severally, are matters which have no bearing upon the question of their liability.  The burden undertaken by plaintiffs in consequence of defendants' promise makes the consideration.  If at the time defendants made their promise to plaintiffs the latter had been under a contract with the Government to do the dredging, some other consideration must have been shown.  But such was not the fact.  The subsequent undertaking of the government contract by plaintiffs, together with the facts set out in the resolutions above quoted, answer the contention of defendants' counsel that from all that appears plaintiffs were fully compensated for their work by the United States Government.  We therefore hold that the instrument sued on is valid as an original promise on the part of defendants and that the evidence supports the finding on the same for the plaintiffs.

Defendants' second main contention is that the conditions of the contract of February 12, have not been fulfilled in that it has not been shown that the defendant H. Hackfeld & Company, Limited, was satisfied that the opening of the channel of Pearl Harbor would open the same to commerce, or that said corporation was satisfied when the work was completed that it did open the said harbor to commerce.  The reference in defendants' contract to the resolutions in the words "as per resolutions passed" renders the latter a part of the contract.  The only question is as to the satisfaction of the agents of the Oahu Sugar Company, Limited, Messrs. H. Hackfeld & Company, Limited.  The other provisions of the resolutions have been complied with.  The satisfaction called for, is not satisfaction with the manner in which the work might be performed; that matter was left to the Federal officials solely.  There is little or no analogy therefore to the case of a contract calling for the performance of work to the satisfaction of an architect.  The satisfaction required is as to

an extraneous fact, namely, whether "the opening of the channel to Pearl Harbor will open the same to commerce." These words are so vague as to be practically void for uncertainty. The nature of the commerce, the size and description of the vessels to engage in it, in order that it should come within the meaning of commerce as there contemplated by defendants, are left uncertain. In fact whether anything more than the legal status of the harbor was in contemplation it is impossible to determine. The plaintiffs should not suffer from the ambiguity. *Lawrence v. McCalmont,* 2 Haw. 425. We are quite satisfied, however, that this proviso can not be extended to any other obstacles to navigation which may exist in other portions of the harbor. What was under contemplation, as is clearly expressed in the proviso, was "the channel to Pearl Harbor" and the work there to be done. There may be said spits, rocks, and innumerable perils in the harbor itself, which may render navigation hazardous. These, however, can not have any bearing on the question whether or not the bar at the entrance has been removed. The ease of navigation is not a factor. It is significant that the proviso uses the present tense: Provided that the agents, &c., *are* satisfied. This would indicate that the satisfaction in question was to be determined before any contract was entered into. It was in the power of the defendant, Messrs. H. Hackfeld & Company, Limited, at that time to have terminated the whole negotiations between the plantations and the plaintiffs if they were not satisfied that the nature of the operation then under contemplation would prove efficacious. Instead of doing so, they signed the subsequent contract of February 12th. This contract, whatever other view may be taken of it, clearly amounted to an unequivocal expression of satisfaction, on the part of the signers, that the opening of the channel of Pearl Harbor would open the same to commerce. The requirements of the proviso are therefore shown to have been fully complied with.

3.	The view which we have taken of the nature of the defendants' undertaking, and the construction to be placed on it, ren-

ders unnecessary any further discussion of the question whether Pearl Harbor is open to commerce.

The exceptions are overruled.

*Atkinson, Judd & Mott Smith* for plaintiffs.

*Kinney, McClanahan & Cooper* for defendants.

