[No. 22701. Department One. April 24, 1931.]

LEGAL ADJUSTMENT BUREAU, *Respondent*, v. WEST COAST CONSTRUCTION COMPANY *et al.*, *Appellants*.[1]

[1]Reported in 298 Pac. 429.

*Wilmon Tucker, Edwin H. Flick,* and *Herald A. O'Neill,* for appellants.

*Mark M. Litchman* and *W. H. Abel (T. H. McKay,* of counsel), for respondent.

MAIN, J.—This action was based upon a promissory note which had been transferred to the plaintiff for the purpose of bringing suit. To the complaint, the defendants pleaded a number of affirmative defenses. The cause came on for trial before the court and a jury, and, at the conclusion of the defendants' evidence, the plaintiff made a motion for a directed verdict, which was sustained. Judgment was entered upon the verdict, as directed, in the sum of $45,795.80, from which the defendants appeal.

For many years the Scandinavian American Bank, a corporation, had been engaged, as its name would indicate, in the banking business in the city of Seattle. Hans Pederson, one of the appellants in this action, resided in the same city, where he was engaged in the contracting business, and was a frequent and sometimes a heavy borrower from the bank. The West Coast Construction Company is a corporation, the stock of which is owned by Pederson and one John Ottesen. May 20, 1916, for money loaned in the sum of $10,000, a note was given the bank, signed "West Coast Const. Co., by John Ottesen, Pres., by Hans Pederson, Sec.," and endorsed on the back, "C. J. Erickson, Hans Pederson, John Ottesen." Pederson testified that, due to a transaction which he had with Erickson, this note became Erickson's primary obligation.

July 31, 1918, there being then in the bank a number of notes evidencing loans to Pederson, or notes upon which he was liable, and the bank desiring that these be merged into one note, a note for $25,400 was

given, which merged the other notes, including the $10,000 note mentioned. The merger note was renewed from time to time, and some payments were made thereon. The last renewal was on April 21, 1921, for the sum of $26,300.40, which note by its terms was due June 11, 1921. It was signed "West Coast Const. Co., by Hans Pederson, Treas., by John Ottesen, Pres.," and on the back was endorsed, "Hans Pederson, John Ottesen."

Pederson testified that, at the time that note was executed, he informed the cashier of the bank that the $10,000 note was Erickson's obligation, and that it should be held by the bank until Erickson endorsed the $26,300.40 note to the extent of $10,000. Pederson further testified that, at each subsequent renewal of the merger note, he informed the cashier of the bank of the Erickson obligation, as he had when the original merger note was executed, and at all times the cashier had assented thereto.

June 30, 1921, the bank became insolvent, and was taken over by the state supervisor of banking, R. A. Langley being placed in charge as liquidator. Pederson testified that he told Langley, as he had already told the cashier of the bank, that the $10,000 note "was Erickson's debt, it was collateral to the other note, and that it was not to be allowed to outlaw, and they stated that they would see to it that it didn't." Erickson at no time paid anything on the $10,000 note, and Pederson testified that he knew at all times that nothing was being paid.

The note for $26,300.40, together with other assets of the insolvent bank, was purchased by the Vance Lumber Company, which assets were sold by the liquidator under an order of the court, and title was taken in the name of Puget Sound Mortgage Company. As

above stated, the note was transferred to the respondent for the purpose of collection.

■ The first question is whether the trial court properly sustained a demurrer to the second affirmative defense. By this defense, the appellants pleaded that, sometime during the year 1920, Pederson had entered into a written contract with the bank by the terms of which interest on all sums of money or any obligations which he then had or would have with the bank, "no matter what the face of the obligation, would be payable at the rate of seven per cent per annum, and no more." The note upon which the suit is based was given on April 21, 1921, and subsequent to the date of the agreement pleaded. The note provided that if it was not paid at maturity, it would draw interest "at the rate of twelve per cent per annum."

The legal effect of the note, which was subsequent to the agreement, was to rescind that agreement to the extent that the two were inconsistent. *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117; *Loudon v. Spencer,* 84 Wash. 236, 146 Pac. 612; *Bader v. Moore Building Co.,* 94 Wash. 221, 162 Pac. 8. The note having provided for interest at twelve per cent per annum after maturity, and it being subsequent to the agreement pleaded, the rate specified in the note would prevail. The trial court properly sustained the demurrer to the second affirmative defense.

■ The next question is whether the trial court rightly rejected the evidence offered in support of the fourth and fifth affirmative defenses. In the fourth affirmative defense, a transaction between the bank and appellant Pederson was pleaded, by which Pederson was induced to purchase stock in the Seattle Sawmills Company, a corporation, which transaction took place prior to the year 1916. It was said that the value

of the stock was incorrectly represented. In the fifth affirmative defense, it was pleaded that the bank had induced Pederson to purchase an eight thousand dollar note which it then held, and which was worthless. This transaction also occurred prior to the year 1916. The present action was begun September 27, 1927. In reply to these affirmative defenses, the respondent had pleaded the statute of limitations.

The note sued upon was a separate and distinct transaction, which took place long afterwards, and had no connection whatever with the two matters pleaded. The action upon the note did not remove the bar of the statute of limitations against the two defenses mentioned, in which the matters stated were pleaded as counterclaims or set-offs. Rem. Comp. Stat., § 266, provides:

"The defendant in a civil action upon a contract expressed or implied, may set off any demand of a like nature against the plaintiff in interest, which existed and belonged to him at the time of the commencement of the suit."

It will be observed that, by this statute, the set-off which may be pleaded must be one which existed at the time of the commencement of suit. The statute of limitations having run on the matters pleaded in the fourth and fifth affirmative defenses, no right of action existed thereon at the time the present suit was instituted. In a note to the case of *Huggins v. Smith,* 141 Ark. 87, 216 S. W. 1, 16 A. L. R. 323; in support of which many authorities are cited, the rule is stated:

"In the absence of an express statute, a demand of a defendant, whether pleaded by way of set-off, counterclaim, or cross-bill, is regarded as an affirmative action, and therefore, unlike a matter of pure defense, is subject to the operation of the statute of limitations, and is unavailable if barred."

The cases of *Rubin v. Lucerne & Aurelia Crown R. Co.*, 87 Wash. 198, 151 Pac. 500, and *Canadian Bank of Commerce v. Sampson*, 145 Wash. 245, 259 Pac. 710, are to the same effect.

The cases of *State ex rel. American Freehold-Land Mtg. Co. v. Tanner*, 45 Wash. 348, 88 Pac. 321, and *Buck v. Equitable Life Assurance Society*, 96 Wash. 683, 165 Pac. 878, are different, in that in each of these cases the matter pleaded was strictly in defense and not by way of counterclaim or set-off, and arose out of the transaction upon which the action was based. In the first of the two cases last mentioned, after stating that it is actions that are barred by statutes of limitations, and not matters of pure defense, it is said:

"Of course, a different question arises when the matters relied upon form the foundation for a counterclaim or cross-complaint,"

which was a recognition of the rule above stated. The trial court did not err in rejecting the offered evidence in support of the fourth and fifth affirmative defenses.

The next question is whether the $10,000 note above mentioned, against which the statute of limitations had run when the present action was instituted, could be offset against the note sued upon. If this were a proper offset, it would be by reason of the fact, as Pederson testified, that when the original merger note and the subsequent renewals were given, the bank was informed that the $10,000 note was Erickson's primary obligation, and that the cashier of the bank stated that they would see that the note was not "allowed to outlaw." If the bank became liable by permitting the statute of limitations to run upon the $10,000 note, it was either by reason of negligence, or by virtue of a contract.

If the $10,000 note had become Erickson's primary obligation, and Pederson was secondarily liable

thereon, Pederson at all times had the right to pay the note and enforce the obligation against Erickson. Pederson was in no manner deceived, because, as above stated, he knew that Erickson was paying nothing on the note. Pederson had the knowledge, power and opportunity to prevent the running of the statute of limitations, and his failure to do anything was negligence on his part. As between Pederson and the bank, the duty of compelling performance by Erickson was upon Pederson. In *City Savings Bank v. Hopson,* 53 Conn. 453, 5 Atl. 601, it is said:

"Even if delay should be imputed to the plaintiff in not commencing suit at maturity, there remained to the defendants ample knowledge, power, and opportunity, and with these went the legal duty, to make the delay harmless, and protect themselves from loss. Not availing themselves of these, the negligence became their own."

The cases of *Bryden v. Cairncross,* 145 Wis. 478, 130 N. W. 527, and *Walmer v. First Acceptance Co.,* 192 Wis. 300, 212 N. W. 638, 51 A. L. R. 605, are to the same effect.

No liability, therefore, could attach to the bank on the ground of negligence in enforcing the $10,000 note against Erickson.

The question then arises whether the bank was liable by reason of a contract. Two of the essentials of any contract are parties capable of contracting, and a consideration. In this connection it will be assumed, without so deciding, that the cashier of the bank and the liquidator of the bank had the power to contract with Erickson that the $10,000 note would be kept alive. If there was a contract, it must be based upon this and other similar testimony of Pederson:

"I told Mr. Lane, and I later told Mr. Langley that that note was Erickson's debt, it was collateral to the

other note, and that it was not to be allowed to outlaw, and they stated that they would see to it that it didn't.''

It will also be assumed that this and other similar testimony rises to the dignity of creating a contract obligation, if made with parties competent to contract and based upon a sufficient consideration. Pederson at all times owed the bank the money for which he gave notes. If the bank, through its cashier, assumed the obligation of seeing that the $10,000 note did not outlaw, the bank received no consideration for that promise, and there would be no contract which would furnish the basis of an action. *Lewis v. McReavy,* 7 Wash. 294, 34 Pac. 832; *Allen v. Farmers & Merchants' Bank,* 76 Wash. 51, 135 Pac. 621.

Aside from this, any statement made by the cashier of the bank at the time the first merger note and the subsequent renewal notes were made, would be merged in the note, and, in the absence of fraud or mistake, Pederson could not plead such collateral agreement for the purpose of limiting his liability. In *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751, it is said:

''It has been repeatedly held by this court that, in the absence of fraud or mistake, it is incompetent for one who signs a promissory note as principal to set up an independent collateral agreement limiting or exempting him from liability. He is bound by the terms of his obligation. *Tacoma Mill Co. v. Sherwood,* 11 Wash. 492, 39 Pac. 977; *Bryan v. Duff,* 12 Wash. 233, 40 Pac. 936, 50 Am. St. 889; *Allen v. Chambers,* 13 Wash. 327, 43 Pac. 57; *Wingate v. Blalock,* 15 Wash. 44, 45 Pac. 663; *Shuey v. Adair,* 18 Wash. 188, 51 Pac. 388, 63 Am. St. 879, 39 L. R. A. 473; *Hemrich v. Wist,* 19 Wash. 516, 53 Pac. 710. This being the rule as between the original parties to the instrument, it follows that the defense could not be set up as against a subsequent holder of the note.''

The note sued upon in this case expressly provided that all parties thereto were "bound as principal and not as surety."

There being no facts nor reasonable inference from facts which would sustain the claimed right to offset the $10,000 note against the note sued upon, the trial court rightly directed a verdict.

The judgment will be affirmed.

MITCHELL, HOLCOMB, and PARKER, JJ., concur.

TOLMAN, C. J. (dissenting)—I concur, except as to the so-called Erickson note. As to that, I think there was sufficient to take the case to the jury on the question of whether the bank and its agents had by their actions created an estoppel.