R. R. WYLIE v. W. T. HIGHTOWER AND J. A. MANGUM.

No. 6163.

1. **Release of Surety.**—A material alteration of a contract, such as extending the time of payment or the release of a security by the creditor without the consent of the surety, will operate as a discharge of the surety.

2. **Case in Judgment.**—Judgment affirmed discharging a surety, it being shown that the creditor and the principal debtor in the contract extended the time of payment

and released a security furnished by the prindipal in the note without the consent of the surtey.

3. **Alteration of Contract.**—Touching the effect of a material alteration by a subsequent contract between the creditor and the principal, without the consent ot the surety, as releasing the surety, it is of no consequence whether the alteration was injurious to the surety. Such alteration is not his contract.

APPEAL from Nolan. Tried below before Hon. Wm. Kennedy.

October 9, 1885, Wylie sued Hightower and Mangum on a promissory note made by them.

Mangum pleaded in defense that he had been discharged by the acts of Wylie and Hightower from liability upon the note; that he was surety upon the note, and that upon signing it he had exacted that Hightower should secure the payment by a trust deed upon a flock of sheep, and by a promissory note held by Hightower.

It was alleged that without the consent of Mangum the time of payment had been extended, and that the security furnished by Hightower had been surrendered by transactions between Wylie and Hightower.

Upon the trial judgment was rendered for plaintiff against Hightower but for Mangum. The plaintiff appealed. A sufficient statement of the testimony is given in the opinion. There is no question upon the pleadings.

No brief for appellant has reached the Reporter.

*Cowan & Fisher*, for appellees, cited Burke v. Cruger, 8 Texas, 67; 7 Wait's Act. and Def., pp. 57–59; Ryan v. Morton, 65 Texas, 258.

HOBBY, JUDGE.—It is a familiar principle, which seems to have been borrowed from courts of equity, that a surety will be discharged if a new agreement be entered into between the creditor and principal debtor varying or enlarging the time of performance of a contract or payment of the debt, and it is immaterial whether the extension of time has operated to the prejudice of the surety or not. 7 Wait's Act. and Def., p. 57.

It is also a well recognized rule that if the creditor without the knowledge or consent of the surety, expressly or tacitly yielded, gives time to the principal by a valid and binding agreement, by enlarging the credit beyond the period mentioned in the contract, it operates to discharge the surety, both in law and in equity. Id.

The reason of the principle is that the surety is bound by the terms of his contract, and if the creditor by agreement with the principal without the concurrence of the other party varies these terms by enlarging the time of performance the surety is discharged, for he is injured and his

risk enhanced. The effect upon his liability is the same, however, whether it be shown that the extension worked an injury or not.    Id.

The only qualification of this rule is that the agreement must be upon a sufficient consideration and binding upon the creditor to give time in order to discharge the surety, unless some other circumstance than mere indulgence to the debtor be given.    Mere delay in calling on the principal will not discharge the surety, provided the delay be unaccompanied with any settled or binding contract for that purpose.    Burke v. Cruger, 8 Texas, 71.    Such are the authorities upon this subject.

It is clearly shown by the evidence in this case that Mangum signed the note as surety; that this was known to the plaintiff; that Hightower, to secure the payment of the note, promised Mangum that he would execute a mortgage to plaintiff for his protection.    This was done in December, 1883, and was known also to plaintiff, as the plaintiff and Mangum discussed that instrument and went together as far as Abilene for the purpose of examining the mortgaged property, which was in Nolan County. Upon arriving at Abilene the trip was abandoned by plaintiff for no assigned reason.    This mortgage fully secured the payment of the note, and although it recited the fact that plaintiff was surety for defendant Hightower on the $5000 note to Coggin & Bro., the amount then shown by it to be due and unpaid by Hightower was the note for $3250 (sued on), and which the flock of sheep and the Midgett note conveyed by the mortgage were evidently intended for it to secure the payment of.    Upon the failure to pay this indebtedness by July 1, 1884, the property was to be sold.    Such was the mortgage of which defendant had knowledge and which was executed as agreed upon between Hightower and himself to secure the note he had signed as surety.

The subsequent mortgage in lieu of this given by Hightower and accepted by plaintiff was dated August 8, 1884.    It conveyed Hightower's undivided two-thirds interest in 4000 head of sheep, the other third being owned by Midgett.    It extended the time for the payment of the note sued on until January 1, 1885, and also the $5000 note due Coggin & Bro.    In default of payment at that time, provision was made for the sale of the property, and it was stipulated that the proceeds of sale should be applied first to the satisfaction of the $5000 note, and after its payment as well as the expenses of the sale the whole or such part of the $3250 note as the funds could pay was to be paid.

There is no evidence that Mangum had any knowledge of this or yielded his assent expressly or by implication.    It is manifest that the time for the payment of the note was extended until January, 1885.

The priority given to the $5000 Coggin & Bro. note by the terms of the second mortgage providing expressly for its satisfaction first, and upon which note Wylie was liable, was a sufficient consideration for the extension granted by him to the principal and made binding the contract of

extension. The only reason assigned by plaintiff for the cancellation and surrender of the first mortgage was that he had been informed that it was improperly recorded, and void as to Hightower's creditors. Accepting this explanation as correct, the plaintiff's position would be no better. There was no necessity for its cancellation upon this ground. If it was improperly recorded it could have again been filed for registry under the chattel mortgage act, even after the suit was brought. It was valid between the parties, and there was no evidence that Hightower had any other creditors.

Nor was there any occasion if this was the reason for releasing the first mortgage that any change whatever should have been made which would affect the surety Mangum without obtaining his assent. It is apparent from the evidence that the creditor, the appellant, extended the time for the payment of the note on which appellee was surety; that this extension was granted upon a valid and binding contract and a sufficient consideration; that the release of the first mortgage without the assent or knowledge of the surety by the acceptance of the second, changed the character of the contract, and lessened the protection and security afforded the surety by the first mortgage and enhanced his risks.

Such being the facts the application of those principles cited construed most favorably in behalf of the plaintiff would result in a discharge of the surety.

We are of opinion therefore that there is no error in the judgment, and that it should be affirmed.

*Affirmed.*

Adopted June 11, 1889.