# FARMERS' STATE BANK OF FLORENCE v. COTTINGHAM et al. (No. 6693.)

(Court of Civil Appeals of Texas. Austin. March 19, 1924. Rehearing Denied April 16, 1924.)

**1. Bills and notes ☾52—Liability on note discharged by novation without express release.**

In view of Negotiable Instruments Act, § 119, subd. 4 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—119, subd. 4), defendants' liability on a note as maker and sureties became discharged by novation when payee agreed to look to other parties for payment, without an express release as required by section 122 (article 6001—122).

**2. Novation ☾5—Release of note by novation unaffected by failure to execute new note for note released.**

Where payee of note agreed to look to other parties for payment, thereby releasing maker and sureties from liability, it was immaterial that the other parties did not execute new note in lieu of one released.

**3. Novation ☾5—Rule as to when original indebtedness discharged by third party's assumption stated.**

Where creditor accepts a promise of third parties to assume indebtedness due it on a note, agreeing to discharge makers, and parties assuming the indebtedness are at all times willing to execute whatever instrument the creditor may require, there is a satisfaction and discharge of original indebtedness or note, and makers are discharged from liability.

4. **Novation ☞3—Promise by third party to pay amount due on note supported by valid consideration.**

A promise by third party to pay amount due on a note, which promise is accepted by holder, who agrees to discharge makers of note, is supported by a valid consideration.

5. **Novation ☞10—Form of liability on note immaterial where novation operates as discharge.**

Whether parties were liable on a note as principals or sureties was immaterial, where they were discharged of their liability by a novation agreement.

6. **Evidence ☞423(8) — Parol evidence admissible to show relation of principal and surety between makers of note.**

Although form of note shows makers thereof to be joint makers, parol evidence is admissible to show relationship of principal and surety between the makers and holder's notice thereof at time of its execution.

7. **Evidence ☞441(11)—Contract of indemnity not embodied in note may be shown by parol.**

Contract of indemnity made at time of execution of a note, but not embodied therein, may be proved by parol, where not inconsistent with terms of note.

8. **Evidence ☞434(12) — Fraud in securing parties' signatures to note may be shown by parol.**

Under Negotiable Instruments Act, § 55 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—55), in action on note, parol evidence was admissible to show fraud in securing signatures of parties thereto under a proper allegation of fraud in the pleadings, even though such testimony varied the terms of note.

Appeal from District Court, Williamson County; George Calhoun, Judge.

Action by the Farmers' State Bank of Florence against W. F. Cottingham and others. Judgment for defendants, and plaintiff appeals. Affirmed.

W. H. Nunn, of Georgetown, for appellant.
Melasky & Moody, of Taylor, for appellees.

### Statement.

BLAIR, J. This suit was instituted by appellant bank seeking to recover on a note for the sum of $833.75, executed jointly by W. F. Cottingham and by John Green' & Sons, a copartnership composed of John Green, Jesse Green, and Olly Green, and made payable to appellant.

Appellees John Green & Sons, filed an answer, consisting of numerous defenses to the note in suit, but only two of them were submitted to the jury or taken into consideration by the court in rendering judgment. One of appellees John Green & Sons' defenses was that at the time of the execution of the note appellant bank represented to John Green, who signed the copartnership's name, John Green & Sons as surety, that it held security for the payment of the note in suit in the form of a mortgage on W. F. Cottingham's one-third interest in certain cold drink and restaurant furniture and fixtures then located in Florence, Tex., which was sufficient to pay the said note; that in the event Cottingham, the maker of the note, did not pay it, then appellees, John Green & Sons, would be protected, and the note would be paid out of said security; that, believing and relying upon said representations, he was thereby induced to sign the copartnership's name to the note; and that the interest of Cottingham in said property on which the bank had a lien to secure the note was not of the reasonable market value of the amount of the note in suit at the time the representations were so made. The other defense of John Green & Sons was that they had been released from the payment of the note in suit by an agreement of appellant bank with the appellee W. F. Cottingham and H. L. Brooks and O. T. Brooks, to the effect that Cottingham might sell his interest in the above-described mortgaged property on which appellant bank held a lien to secure the payment of the note in suit to H. L. and O. T. Brooks, and that they might assume the payment of said note, and that the appellees W. F. Cottingham, John Green, Jesse Green, and Olly Green would be thereby discharged from the payment of said note.

Appellee Cottingham filed a formal answer, and adopted the answer of John Green & Sons as his own.

Appellant filed a supplemental petition, demurring generally and specially to the above answer, and a general and special denial of the facts alleged.

The case was tried to a jury upon special issues, and judgment was rendered for appellees upon their answers to the special issues based upon the above-mentioned pleadings. Appellant's motion for a new trial was overruled; an exception taken thereto, and it has duly perfected this appeal seeking a review by this court of the various matters complained of as error on the part of the trial court.

### Findings of Fact.

The following are the questions submitted and the answers of the jury thereto, upon which the court rendered judgment:

"Question No. 1: Did the president of plaintiff bank agree with the defendant W. F. Cottingham and with H. L. Brooks and O. T. Brooks that the said Cottingham might sell his interest in the property on which the plaintiff held a lien to secure the payment of the note herein sued upon to H. L. Brooks and O. T. Brooks, and that the said H. L. Brooks and O. T. Brooks might assume the payment of said note and that the defendants Cottingham,

John Greene, Jesse Greene, and Olly Greene would be discharged from the payment of said note? Answer this question 'Yes' or 'No.'" To which the jury answered: "Yes."

"Question No. 2: If you answer 'Yes' to question No. 1, then answer this question: Were the said H. L. Brooks and O. T. Brooks, at all times after the making of said agreement to assume the payment of the note herein sued upon (if there was such agreement between the parties as referred to in question No. 1), ready and willing to execute whatever note or instrument the plaintiff might require from them in accordance with the terms of said agreement, if any, in substitution of the note herein sued upon? Answer this question 'Yes' or 'No.'" To which the jury answered: "Yes."

"Question No. 3: At the time the note herein sued upon was signed by the said John Greene did the president of plaintiff bank state and represent to John Greene that the plaintiff held security for the payment of the note herein sued upon which was sufficient to pay the said note, and that in the event the defendant Cottingham did not pay said note the defendants John Greene & Sons would be protected and said note would be paid out of said security? Answer this question 'Yes' or 'No.'" To which the jury answered: "Yes."

"Question No. 4: If you answer 'Yes' to question No. 3, then answer this question: Did the defendant John Greene rely upon and believe said statement and representation (if any), and was he thereby induced to sign said note in the name of John Greene & Sons? Answer this question 'Yes' or 'No.'" To which the jury answered: "Yes."

"Question No. 5: What was the fair and reasonable market value of the property covered by the chattel mortgage which has been introduced in evidence, in Florence, Tex., at the time the same was sold to Bill Elroy?" To which the jury answered: "$1,200."

"Question No. 6: What amount of money did the said property covered by said chattel mortgage sell for at the time and place of said sale to Bill Elroy?" To which the jury answered: "$1,500."

"Question No. 1 asked by appellant: Was the said agreement on the part of the bank conditioned that the Brooks boys have their father join with them in the execution and delivery to the bank of a note in lieu of and to take the place of the note herein sued on, before the said Cottingham and the Greenes should be released?" To which the jury answered: "No."

The findings of fact by the jury in answer to the various questions above propounded are sufficiently supported by evidence. John Green & Sons were liable as sureties on the note under the testimony adduced on the trial of the case. Any other finding of fact necessary to dispose of any question raised by this appeal will be found in the opinion.

[1] Appellant's first proposition is as follows:

"Judgment should have been for appellant. because the appellees were not relieved from their liability on the note sued on, in that the said note falls within the provisions of section 122, of the Uniform Negotiable Instruments

Act, and there was no unconditional release or renunciation of liability on the said note, made in writing or accompanied with a surrender of the note to the makers thereof, as required by the said act."

Article 6001—122, Vernon's Ann. Civ. St. Supp. 1922 (section 122, Negotiable Instruments Act of 1919), is as follows:

"*Renunciation of Rights by Holder.*—The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

Article 6001—119, subd. 4 (section 119, subd. 4), provides that a negotiable instrument may be discharged "by any other act which will discharge a simple contract for the payment of money."

The exact question here raised was decided adversely to appellant's contention by this court on March 5, 1924, in the case of Lockhart State Bank v. Baker et al., 263 S. W. ——, not yet officially published, in which case we used the following language pertinent to this proposition, and we quoted from an opinion by the Amarillo Court of Civil Appeals also deciding this point adversely to appellant:

"Appellant's contention has been recently decided adversely to it in the case of Hall v. Wichita State Bank & Trust Company, 254 S. W. 1036, in a well-considered opinion by the Amarillo Court of Civil Appeals, and in which a writ of error was refused by the Supreme Court November 12, 1923. We quote the following from this opinion: 'From what has been said it seems apparent to us that it was the intention of the lawmakers by section 122 to deal with the formal and express release of the common law, and by the provisions of section 119, par. 4, to continue in effect other recognized methods of discharging obligations of this character. An express release is not necessary to a discharge by novation. The intention or agreement to accept the new obligation in lieu and discharge of the old may be implied.'

"The method of discharging the note in suit in the Hall-Bank Case, supra, was by novation; while the discharge of the note in suit in the case at bar was by accord and satisfaction, and by equitable estoppel, or estoppel in pais. These methods of discharging simple contracts were recognized by the common-law and equity courts, and we are clear in the view that it was not the intention of the Legislature to preclude these defenses by enacting article 6001, § 122, supra. It is evident that it was the intention of the Legislature to incorporate in this article of the statute the common-law rules as announced by the text-writers and adjudicated cases of both England and America, which declared that a contract might be re-

leased by a formal instrument for that purpose without the necessity of showing a consideration therefor; or upon payment of a less consideration than provided in the contract and a surrender to the debtor of the instrument evidencing the contract for cancellation; such was considered in law equivalent to a release in writing. See 1 C. J. 543, § 46, notes 8, 9, and 10, and cases there cited. We have not examined all the cases cited by this authority, but find those examined support the text and the rule above announced.

"It is also clear to our minds that it was the intention of the Legislature, in enacting article 6001, § 119, and the various subdivisions, supra, to incorporate in the statutory law other methods of discharging negotiable instruments, which had theretofore been declared by the common law to discharge a simple contract. Neither of these sections relate to, limit, or control the other, but relate to and control separate and entirely distinct matters. We, therefore, do not sustain appellant's contention that it was the intention of the Legislature in enacting section 122, supra, to cover all character of discharge of negotiable instruments, and to preclude thereafter proof of any character of discharge by oral testimony."

[2, 3] Under the evidence and the findings of the jury there is no question in this case but that all the appellees were discharged from liability on the note in suit by novation. The fact that H. L. Brooks and O. T. Brooks did not execute a note in lieu of the one in suit is not material, since the claim of appellees for release was based upon the fact that appellant accepted the promise of the Brooks to pay the note in suit, and it is not necessary to show that the agreement of acceptance had been fully executed. The jury found in this connection that H. L. Brooks and O. T. Brooks were at all times ready to execute whatever note or instrument appellant might require in accordance with the terms of said agreement. It is true that appellant could not have sued H. L. and O. T. Brooks upon the note in suit, yet appellant could have sued them upon their assumption agreement to pay the note. Where a bank accepts the promise of third parties to assume a certain indebtedness due it on a note, agreeing to discharge the makers thereof, and it is further shown that the parties assuming the indebtedness were at all times thereafter ready and willing to execute whatever note or instrument said bank might require in accordance with the terms of said agreement, there is a satisfaction and discharge of the original indebtedness or note, and the makers thereof would thereby be discharged from liability on the said note. Ry. Co. v. Harriett, 80 Tex. 73, 15 S. W. 557; Bost v. Barringer (Tex. Civ. App.) 202 S. W.

791; 1 C. J. p. 545, § 51, notes 27, 28, and 29.

[4] Likewise, in this connection, is the contention by appellant that the release claim of appellees is not based upon a valuable consideration without merit. A promise by a third party to pay an amount due on a note, which promise is accepted by the holder, who agrees to discharge the makers thereof, is supported by a valid consideration. 1 C J. 345, § 51; Hall v. Bank (Tex. Civ. App.) 254 S. W. 1036; Ralston v. Milling Co. (Tex. Civ. App.) 26 S. W. 746; Wettermark v. Burton, 30 Tex. Civ. App. 509, 70 S. W. 1029.

[5, 6] Appellant's contention that as between John Green & Sons and the bank, said John Green & Sons were principals on the note is immaterial, since they were discharged by the novation agreement whether they were liable on the note in suit as principals or sureties. Neither do we sustain appellant's contention that parol evidence is inadmissible to show the relationship of principal and surety between the makers and the holder's notice thereof at the time of its execution. Parol evidence is admissible to show such facts, although the form of the note shows them to be joint makers. Clevenger v. Bank (Tex. Civ. App.) 183 S. W. 65; Burke v. Cruger, 8 Tex. 66, 58 Am. Dec. 102; Wylie v. Hightower, 74 Tex. 306, 11 S. W. 1118.

[7] Likewise can a contract of indemnity, made at the time of the execution of a note, but not embodied in the note, be proved by parol testimony, where not inconsistent with the terms of the note.

[8] Neither do we sustain the several propositions of appellant relating to the admission of parol evidence on the issue of fraud asserted by John Green & Sons. Where the signatures of parties to a note are secured by fraud, the note is void, and parol evidence is admissible to establish such fraud, under a proper allegation of fraud in the pleadings, even though such parol testimony varies the terms of the note. The following authorities cited by appellees sustain this proposition, and numerous others could be cited: Article 6001—55, Vernon's Tex. Statutes, 1922 Supplement; Citizens' National Bank of Cameron v. Cammer (Tex. Civ. App.) 86 S. W. 625; Speer v. Rushing (Tex. Civ App.) 183 S. W. 67; First State Bank of Amarillo v. Cooper (Tex. Civ. App.) 179 S. W. 295; Corpus Juris, vol. 8, p. 782.

We have carefully examined all of appellant's propositions, but do not sustain any of them, and the judgment of the trial court rendered herein is affirmed.

Affirmed.