## KAUFMAN v. PENN MUT. LIFE INS. CO.
### No. 5616.

Court of Appeals of the District of Columbia.
Argued Jan. 5, 1933.
Decided March 6, 1933.

Petition for Rehearing Denied March 30, 1933.

George E. Edelin and Theodore D. Peyser, both of Washington, D. C., for appellant.

Francis P. Sheehy and Vincent A. Sheehy, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a summary judgment entered against the appellant as defendant below under the seventy-third rule of the lower court, upon the ground that the matters of defense set forth in the plea and affidavit of defendant were insufficient to defeat the plaintiff's claim. The validity of the seventy-third rule is established by the Supreme Court in Fidelity & Deposit Company v. United States, 187 U. S. 315, 23 S. Ct. 120, 47 L. Ed. 194.

The action was begun in the lower court by a declaration filed by the Penn Mutual Life Insurance Company, hereinafter called the company, as plaintiff, against Jack M. Goldsmith and Harry Kaufman as defendants, praying judgment against them upon four certain promissory notes signed by them, and made payable to the company's order. Goldsmith made no defense, and judgment was entered against him by default. Kaufman filed an answer, alleging that he had signed the notes as guarantor only, and that he had been released from liability upon them by an extension of the time of payment granted by the company without his knowledge or consent.

It appears that on May 15, 1926, Goldsmith was indebted to the company in the sum of $125,000 for money loaned to him, and on that date he executed and delivered to it his four promissory notes, the first being for the sum of $2,500 payable in two years from date, the second and third being each for the sum of $5,000, payable, respectively, in three and four years from date, and the fourth being for the sum of $112,500, payable in five years from date, all bearing interest as therein specified. The defendant Kaufman became guarantor on each of the notes, and indorsed on each a written guaranty of the payment of both principal and interest thereof as and when the same should become due, and of any extension thereof in whole or in part, accepting all its provisions, authorizing the maker, without notice to him, to obtain an extension or extensions in whole or in part, and waiving protest, demand, and notice of protest; also agreeing that, in case of nonpayment of the principal or interest when due suit might be brought by the holder of the note against him, at the option of the holder, whether such suit had been commenced against the maker or not.

Concurrently with the execution and delivery of the notes to the company, Goldsmith, with Kaufman's knowledge and assent, executed and delivered to the company a deed of trust upon certain described real estate as security therefor. In and by this instrument it was stipulated that the company might agree to an extension of time with the owner of the property, assigns, or grantees of Goldsmith, in which event it should not operate to release Goldsmith, the grantor. On June 6, 1927, Goldsmith conveyed the mortgaged property to Rita R. Childress, and all payments subsequently made upon the notes were made by her. She received all the rents, issues, and profits from the property thereafter, and the company dealt with her as the one to whom it should look for the payment of the obligation. Nevertheless Childress did not assume to pay the notes or any part thereof, nor become personally liable on the obligation secured by the deed of trust. It does not appear that such a stipulation was contained in the conveyance to her from Goldsmith, nor that she executed any instrument making her liable upon the mortgage debt, nor does it appear that the company in any binding manner accepted

Childress as debtor in the obligation in the place of Goldsmith. Accordingly after the conveyance to Childress, as before, Goldsmith was liable to the company as the principal debtor upon the notes, Wolfe v. Murphy, 47 App. D. C. 296, and the liability of Kaufman as guarantor of the notes was unaffected by the conveyance.

It appears that on August 24, 1930, the third note of the series and the semiannual interest on the fourth note became due, and the company then agreed in writing with Childress, for a valuable consideration, to extend the time of payment thereof for a period of thirty days. This was done without the knowledge or consent of either Kaufman or Goldsmith. Childress at that time paid the sum of $536.54 upon the debt, and no subsequent payment was ever made thereon. On October 14, 1930, a sale of the mortgaged premises was made under the deed of trust, and the property was purchased by the company at a price which after deduction of taxes and costs left a balance of $15,589.82 of the mortgage debt yet unpaid. This sum has not since been paid in whole or in part, and the present suit was brought to obtain judgment for it.

It is contended by Kaufman that the extension granted by the company to Childress on August 25, 1930, without his knowledge or consent, operated to release him from liability upon the notes. The lower court, however, denied this contention, and we think its ruling is correct.

▮ It is contended by Kaufman that the guaranty indorsed by him upon the notes authorized the maker, Goldsmith, without notice to Kaufman, to obtain an extension or extensions of the notes in whole or in part, but did not authorize any extension which might be granted without his consent to any other party or parties or subsequent owner or owners of the property, and therefore that the extension granted to Childress without his consent had the effect of releasing him from liability upon the notes.

We think that this interpretation of the purport and effect of the indorsement written by Kaufman on the notes is too narrow, and that the indorsement fairly expressed his assent to any extension of the notes in whole or in part whether granted to the maker or any other person. Moreover, it is expressly agreed by both parties that the notes and deed of trust were parts of the same transaction, and that their terms should be considered together in passing upon the liability of Kaufman as guarantor, citing Cafritz

Construction Company v. Mudrick, 61 App. D. C. 189, 59 F.(2d) 864, 60 W. L. R. 538. The provisions concerning extensions contained in the deed of trust may therefore be considered together with those indorsed on the several notes in judging of the intent of the parties making the indorsements. These provisions are to the effect that the company may agree to an extension of time with the owner of the property, who at the time was Goldsmith, and also with the assigns or grantees of Goldsmith, in which event it should not operate to release Goldsmith, the grantor. These provisions manifestly contemplate the possibility of a sale and conveyance of the mortgaged property by Goldsmith to a third person, and that in such case the company may extend the time of payment to such grantee in the same manner as is provided in the indorsement of the notes in favor of Goldsmith. It follows that the extension in question did not have the effect of releasing Kaufman as guarantor of the debt.

▮ Moreover, it is established by the great weight of authority in England and the United States that an extension of time granted by the holder of a note by a contract with a third person, not a party to the note, does not have the effect of releasing a guarantor upon the note even if made without his knowledge or consent. This conclusion rests upon the principle that the terms of the note as between the creditor and principal debtor are not altered by an agreement with a third person not a party to the instrument, and consequently that the guarantor in such case loses none of the rights secured to him as against either the creditor or principal debtor because of the extension. The rule is supported by abundant authority that a guarantor upon a note is not released by an extension of time, without his consent, unless made by an agreement of the creditor with the principal debtor upon the note.

In Daniel on Negotiable Instruments, vol. 2, p. 1491 (6th Ed.), it is said: "The agreement and indulgence in order to discharge the drawer or endorser, must be made with the maker or acceptor who is the principal debtor; and if it be made with a third party it will not affect the drawer or endorser's rights or remedies, though such third party may have his appropriate remedy for breach of the contract with him."

In Wright v. Independence National Bank, 96 Va. 728, 32 S. E. 459, 460, 70 Am. St. Rep. 889, this subject is very fully discussed, and it is said in part: "The text writers generally, in discussing the character of

the agreement which will operate as a discharge of the indorser, drawer, or surety, seem to treat it as a matter of course that the agreement must be with the principal debtor. 2 Brandt, Sur. § 342; Baylies, Sur. p. 240; 1 Pars. Notes & B. p. 238; Edw. Bills & Prom. N. p. 567; 24 Am. & Eng. Enc. Law, p. 238; 5 Rob. Prac. 769. And this would seem to be necessarily so upon the grounds upon which it is held that the indorser, drawer, or surety is discharged from liability."

See, also, Frazer v. Jordan, 8 E. & B. 303; Lyon v. Holt, 5 M. & W. 253, 254; French v. Bates, 149 Mass. 73, 21 N. E. 237, 4 L. R. A. 268; Brosemer v. Brosemer, 99 Misc. 101, 162 N. Y. S. 1067; 12 R. C. L. § 36, p. 1085.

In conformity with the foregoing rule, it is apparent that the contract for an extension made between Childress and the company without the knowledge or participation of Goldsmith, the principal debtor, did not operate to release Kaufman as guarantor upon the obligation.

Appellant contends that the default in the payment of the notes was followed by an unreasonable delay of the company in notifying him thereof, and that this operated to discharge him from liability, at least to the extent of any injury or damage occasioned by such default and delay in giving him notice. He alleges that such damage and injury was occasioned by the depreciation in value of the mortgaged property and the loss of rents and profits on the real estate accruing between the time of the default and notice to him thereof. This contention is not well taken. It is established as a general rule that, in the case of an absolute guaranty, it is the duty of the guarantor to see that the sum guaranteed is paid, and there is no duty on the creditor to give notice to the guarantor of default by the principal debtor. Welch v. Walsh, 177 Mass. 555, 561, 59 N. E. 440, 52 L. R. A. 782, 83 Am. St. Rep. 302; Booth v. Irving National Bank, 116 Md. 668, 674, 82 A. 652; City Savings Bank v. Hopson, 53 Conn. 453, 455, 5 A. 601; Jones, Mortgages (6th Ed.) § 1220.

The appellant contends that certain taxes and commissions paid and deducted by the trustee who made sale of the property were illegal and excessive, and should be allowed as a set-off against the indebtedness sued upon in this case. We think that these claims are not set out by defendant in his plea with sufficient precision and distinctness to entitle them to be received as grounds of defense. Moreover, it is not contended that the company profited by them. It is also alleged that, when the company purchased the mortgaged property at the foreclosure sale, such purchase had the effect of discharging the indebtedness secured thereon. This contention must be overruled. Shepherd v. May, 115 U. S. 505, 6 S. Ct. 119, 29 L. Ed. 456.

The judgment of the lower court is affirmed, with costs.