John F. TOMLIN, Trustee,
Plaintiff-Appellee,

v.

The CERES CORPORATION et
al., Defendants,

Harry I. NEUMAN, Defendant-Third-
Party Plaintiff-Appellant,

MITCHELL T. CURTIS & CO., INC.,
Third-Party Defendant-Appellee.

No. 74–1092.

United States Court of Appeals,
Fifth Circuit.

Jan. 29, 1975.

W. F. Leigh, Pecos, Tex., for appellant.

Calvin W. Wesch, Kermit, Tex., for Mitchell T. Curtis & Co., Inc.

Before RIVES, WISDOM and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge.

This is a diversity action on a $165,064.54 note and on a contract which guaranteed payment of the note. John Tomlin (payee of the note) filed the action against the limited partnership, Ceres Ranches LTD (the maker of the note), against the Ceres Corporation (the sole general partner of Ceres Ranches LTD)[1] and against Harry I. Neuman and Mitchell T. Curtis & Co., Inc. (guarantors of part payment of the note).

The defendants are closely related. Defendant Mitchell T. Curtis & Co., Inc. owns 75% of defendant Ceres Corporation. Defendant Ceres Corporation is the sole general partner of defendant Ceres Ranches LTD. The President of defendant Mitchell T. Curtis & Co., Inc. is Mitchell T. Curtis, who is also President of defendant Ceres Corporation. Defendant Neuman is an officer of defendant Ceres Corporation and owns 25% of it.

All defendants defaulted except Neuman, who sought to exonerate himself in three ways. First, he claimed that he was discharged from liability under his guaranty contract because of an extension of time granted the primary debtor, defendant Ceres Ranches LTD. Second,

he claimed that he was entitled to credit for certain payments made by Mitchell T. Curtis & Co., Inc. Third, he claimed that Mitchell T. Curtis (President of Mitchell T. Curtis & Co., Inc. and Ceres Corporation) had contracted to indemnify him for any loss he might suffer by reason of his guaranty contract. Neuman brought Mitchell T. Curtis into the fray as a third party defendant.

The District Judge rejected all three defenses. Neuman appeals. We affirm.

Except for the multiplicity of parties and contracts, the facts are simple. Plaintiff John F. Tomlin is the trustee for a huge number of creditors of the financially-troubled Ceres Ranches LTD. Ceres Ranches LTD, for reasons not material to this appeal, gave Tomlin a note for $165,064.54, representing the total amount owed by Ceres Ranches LTD to creditors represented by Tomlin. The note was dated 10 November 1966 and payable two years from date.

In addition to getting Ceres Ranches LTD to give him the note, Tomlin was able to obtain guarantees the note would be paid, at least in part. Harry I. Neuman and Mitchell T. Curtis & Co., Inc. agreed to guarantee part payment of the note. Specifically, each agreed to make good $25,000 of the debt if the primary debtor (Ceres Ranches LTD) failed to pay.

Neuman sought to protect himself if Ceres Ranches LTD defaulted. On the same day the guaranty contracts were executed, the following indemnification contract was executed:

---

1. It has not been contended that Ceres Corporation was not bound because it could not legally act as a partner. The general rule in Texas, as elsewhere, is that a corporation cannot become a partner. See, for example, Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716 (Texas, 1945); Henn, Law of Corporations, § 183, p. 351, Anno. "Corporation's Power to Enter into Partnership or Joint Venture", 60 A.L. R.2d 913. The reason most frequently assigned is that the entry of a corporation into a partnership allows the corporation to be bound by the acts of other partners, thereby depriving the corporation's directors of management of corporate affairs. This rationale would not apply in this case where the corpo-

ration is the sole general partner of the partnership. Texas courts have generally been reluctant to apply the rule when the reason for applying it is absent. E. g., Port Arthur Trust Company v. Muldrow, 155 Tex. 612, 291 S.W.2d 312, 60 A.L.R.2d 913 (1956). Furthermore, a corporation which represents itself to be a partner cannot, as a general rule, deny that status to escape liability to a person who has been misled by the corporation's representation. See, e. g., Millers' Indem. Underwriters v. Patten, 238 S.W. 240 (Tex.Civ. App.1922) aff'd, 250 S.W. 154 (Tex.Comm. App.1922); Annot. "Corporation's Power to Enter into Partnership or Joint Venture", 60 A.L.R.2d 913.

## AGREEMENT OF INDEMNITY

"WHEREAS, Harry I. Neuman is unwilling to execute the GUAR-ANTEE AGREEMENT of a portion of the note from Ceres Ranches, a limited partnership, to John F. Tomlin, Trustee, unless he receives the agreement of Indemnity;

NOW, THEREFORE, the undersigned agrees to indemnify, and hold harmless Harry I. Neuman, his heirs, successors and assigns, from any loss, cost or expenses which Harry I. Neuman, his heirs, successors and assigns may suffer by reason of:

The execution by Harry I. Neuman of the guarantee agreement above described.

Dated: 10th, of November, 1966

[Signature of Mitchell T. Curtis]

Mitchell T. Curtis
Mitchell T. Curtis & Co., Inc.
President
315 Montgomery St.
San Francisco, Calif.

Attest: Melvin H. Brown
Melvin H. Brown, Asst. Secy."

Pay day arrived; payment was not made. On November 25, 1968, an extension of time contract was executed. In relevant part, it recited:

WHEREAS, on the 10th day of November, 1966, Ceres Ranches, a Limited Partnership, acting by The Ceres Corporation as General Partner, executed a Deed of Trust note payable to the order of John F. Tomlin, Trustee, for the creditors listed on the exhibit to said note, said note being in the sum of One Hundred, Sixty Five Thousand, Sixty-four and 54/100 ($165,064.54) Dollars, bearing interest from date at the rate of six per cent (6%) per annum, said note being due and payable on or before two (2) years after date.

\* \* \* \* \* \* \* \* \* \*

On the said 10th day of November, 1966, Harry I. Neuman and Mitchell T. Curtis & Co., Inc. executed a Guaranty Agreement wherein each of said parties agreed to guarantee the payment of said Deed of Trust Note to the extent of Twenty Five Thousand Dollars ($25,000) each, as more specifically provided in said agreement to which reference is here made for all purposes.

WHEREAS, Ceres Ranches has agreed to make monthly payments in the sum of One Thousand and No/100 ($1,000.00) Dollars each to be applied upon said note for a period of nine (9) months, commencing on or before December 10, 1968, and to pay the entire balance of said note, including both principal and interest, on or before September 10, 1969, and the owner and holder of said note has agreed not to foreclose the Deed of Trust lien securing said note provided said monthly payments are timely made by the said Ceres Ranches.

WHEREAS, Mitchell T. Curtis & Co., Inc., for and in consideration of the extension of time granted for the payment of said note and the agreement by the owner and holder thereof not to foreclose provided

nine (9) monthly payments in the sum of $1,000.00 each are made on or before the 10th day of each month beginning on December 10, 1968, and the entire balance, including both principal and interest, is paid on or before September 10, 1969, has agreed to guarantee the additional sum of Fifty Thousand and No/100 ($50,000.00) Dollars, so as to make the total amount of its Guaranty Agreement the sum of Seventy Five Thousand and No/100 ($75,000.00) Dollars.

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that Mitchell T. Curtis & Co., Inc., a corporation, does hereby guarantee the payment of $75,000.00 of the above described Deed of Trust Note dated November 10, 1966 . . . . PROVIDED FURTHER, that this guaranty and the prior guaranty of Harry I. Neuman to the extent of $25,000.00, shall extend and be enforceable only as to the first One Hundred Thousand and No/100 ($100,000.00) Dollars of the amount of said note, and this guaranty shall reduce pro tanto as to any part or portion of payments first made on said note; and when $100,000.00 of the amount of said note . . . has been paid (whether principal, interest, or both) this Guaranty Agreement shall terminate and be of no further force and effect.

It is further understood and agreed that all monthly payments made by Ceres Ranches during the extended period shall be credited not only against said Deed of Trust Note but also against the guaranty of Mitchell T. Curtis & Co., Inc. hereby given. It is further expressly understood and agreed that nothing herein contained shall in any manner alter or modify the liability of Harry I. Neuman on the Guaranty Agreement dated November 10, 1966.

EXECUTED this the 25th day of November, A.D. 1968.

MITCHELL T. CURTIS & CO., INC.

By: /s/ Mitchell T. Curtis
_____
Mitchell T. Curtis,
President.

---

Notice that only Mitchell T. Curtis, acting on behalf of Mitchell T. Curtis & Co., Inc., signed this agreement. Neuman had no part in it.

The note was not fully paid on September 10, 1969, as Mitchell T. Curtis & Co., Inc., had promised it would be. However, monthly payments as required by the extension contract were begun. There were 22 such payments, the last on November 1, 1970. The payments were made not by the primary debtor, Ceres Ranches LTD, but by the co-guarantor Mitchell T. Curtis & Co., Inc.

Tomlin filed this suit to collect the balance due on the note on November 3, 1972.

All the transactions involved occurred in Texas, and the parties agree that Texas law governs.

The primary question is whether the extension agreement signed by Mitchell T. Curtis as agent of Mitchell T. Curtis & Co., Inc. legally discharged Neuman as a non-consenting guarantor.

■ The law in Texas, as elsewhere, is that any contract alteration—such as an extension of time agreement—between a principal debtor and a creditor discharges a guarantor. Wylie v. Hightower, 74 Tex. 306, 11 S.W. 1118 (1889); 10 Williston on Contracts § 1222 (3rd ed., 1967). A reason frequently assigned is that the contract the guarantor promised to guarantee no longer exists. It has been legally terminated by the new contract between the principal debtor and the creditor. "If an alteration be made in a contract 'in a point so material as in effect to make a new contract', without the

consent of a guarantor, he is discharged. . . . And if he be then sued on the original contract a good answer is, 'that such contract no longer exists, it having been legally terminated by the altered or substituted contract made by the parties'." Kingsbury v. Westfall, 61 N.Y. 356, 360 (1875); 10 Williston on Contracts § 1225 (3rd ed., 1967).

Another reason is the inherent prejudice to the guarantor resulting from the termination of the underlying contract. He has lost his right to pay the debt on pay day and to obtain reimbursement through subrogation to the creditor's position. He has lost his right to insist that suit be brought by the creditor against the debtor. His risk has been increased by the greater time given the primary debtor. Having lost these benefits of his guaranty contract, the guarantor can no longer be held to it. Sauder v. Dittmar, 10 Cir., 1941, 118 F.2d 524; Gleason v. McDonald, 6 Cir., 1939, 103 F.2d 837; 10 Williston on Contracts § 1225 (3rd ed., 1967).

■ The law is different when the principal debtor is not a party to the extension of time agreement. If the extension of time agreement is between the creditor and some third party, the contract between the primary debtor and the creditor is unaffected. The guarantor retains all the rights—e. g., exoneration, subrogation, reimbursement—that he had under the original contract. He can insist on performance of the original contract between the primary debtor and the creditor, notwithstanding the fact that this performance may be a breach of the contract between the creditor and a third party. The guarantor's rights under the original contract being unaffected by any extension of time not agreed upon by the same parties who made the contract, the guarantor is not discharged. Kaufman v. Penn Mutual Life Ins. Co., 1933, 62 App.D.C. 37, 64 F.2d 160, cert. den., 289 U.S. 763, 53 S.Ct. 793, 77 L.Ed. 1506; 10 Williston on Contracts § 1224 (3rd ed., 1967).

The problem is to place this case in its proper category. Is this a case in which the primary debtor (Ceres Ranches LTD) was a party to an extension agreement so that the guarantor was released from liability? Or, on the other hand, is this a case in which the primary debtor was not a party to the extension agreement so that the guarantor is not relieved of liability?

■ The burden was upon Neuman to place the case in the category favorable to him—to prove that Ceres Ranches LTD was a party to the extension of time agreement. Discharge of a contract obligation is an affirmative defense. Rule 8(c), Fed.R.Civ.P.

The only evidence Neuman produced tending to show that Ceres Ranches LTD was a party to the extension of time agreement was a representation contained in the extension agreement itself. The extension agreement, signed by Mitchell T. Curtis as agent of Mitchell T. Curtis & Co., Inc., recites that, as consideration for the extension of time, "Ceres Ranches has agreed to make monthly payments . . . .".

■ Such a recital is incompetent as proof that Ceres Ranches LTD, in fact, agreed to the extension of time. An out-of-court statement, not made under oath, admitted to show the truth of the matters contained in it is incompetent hearsay. See Jacksonville Paper Co. v. N.L.R.B., 5 Cir., 1943, 137 F.2d 148, cert. denied, 320 U.S. 772, 64 S.Ct. 84, 88 L.Ed. 462; Superior Engraving Co. v. N.L.R.B., 7 Cir., 1950, 183 F.2d 783, cert. denied, 340 U.S. 930, 71 S.Ct. 490, 95 L.Ed. 671; Dallas County v. Commercial Union Assur. Co., 5 Cir., 1961, 286 F.2d 388; Emmco Ins. Co. v. Wallenius Caribbean Line, 5 Cir., 1974, 492 F.2d 508; Vanston v. Connecticut General Life Ins. Co., 5 Cir., 1973, 482 F.2d 337.

Even if it were not hearsay, Neuman would not be aided by the statement. It is a statement only of Curtis' opinion or conclusion that Ceres Ranches LTD has entered a binding legal agreement. The statement contains no fact showing such agreement by Ceres Ranches LTD.

 The crucial fact required to show that Ceres Ranches LTD, in fact, agreed to the extension was assent by the Ceres Corporation's Board of Directors. Ceres Ranches LTD is a limited partnership. A limited partnership acts only through its general partner, in this case, Ceres Corporation. Donroy Limited v. United States, 9 Cir., 1962, 301 F.2d 200; Riviera Congress Associates v. Yassky, 18 N.Y.2d 540, 277 N.Y.S.2d 386, 223 N.E.2d 876 (1966); Vernon's Ann. Civ.St. Art. 6132b, § 9(1) read with Vernon's Ann.Civ.St. Art. 6132a, § 10(a). Ceres Corporation, in turn, could assent to the extension of time only through action by its board of directors. A corporation executes its business affairs by, and is bound by, the actions of its board of directors. Vernon's Ann.Tex.Civ.St., Bus.Corp.Act, Art. 2.31; Duncan v. Ponton, 102 S.W.2d 517 (Tex.Civ.App.1937); Reynolds-Southwestern Corp. v. Dresser Industries, Inc., 438 S.W.2d 135 (Tex.Civ. App.1969). Since the recital in the extension agreement contained no evidence of assent by the Ceres Corporation's board of directors, there was no evidence of any fact tending to prove agreement to the extension by Ceres Corporation on behalf of Ceres Ranches LTD.

 In the complete absence of any competent evidence that Ceres Ranches LTD was a party to the extension agreement, the only factual finding supportable by the record was that Ceres Ranches LTD was not a party to the extension agreement.[2] This brings the case within the rule that an extension of time agreement between a creditor (Tomlin) and a third party (Mitchell T. Curtis & Co., Inc.) leaves a guarantor (Neuman) unaffected and does not discharge him.

The District Judge was correct in holding that the extension agreement did not release Neuman.

Neuman has two other arguments.

First, he says that the Curtis-Tomlin extension contract kept him from collecting from Mitchell T. Curtis & Co., Inc. under the indemnification contract. He says that if the extension contract had not been executed, he could have paid the $25,000 to Tomlin, due under his guaranty contract, and been reimbursed by Mitchell T. Curtis & Co., Inc. under the terms of the indemnification contract. Therefore, he is entitled to credit for the $22,000 paid by Mitchell T. Curtis & Co., Inc. to Tomlin under the extension contract. That amount, in the absence of the extension contract, could have been collected by him under the indemnification contract.

 Neuman misunderstands the effect the extension contract had on the indemnification contract. That effect was nil. Neuman had every right after execution of the extension contract to pay the $25,000 [3] and seek indemnification from Mitchell T. Curtis & Co., Inc. The Mitchell T. Curtis & Co., Inc. promise to indemnify Neuman could not be affected by any agreement Mitchell T. Curtis & Co., Inc. might make with a third party such as Tomlin. One does not escape contract obligations by making another contract with a third party.[4]

---

2. Unfortunately, the trial judge did not make the findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P. We are thus handicapped by the lack of a factual finding as to whether Ceres Ranches LTD agreed to the extension. In such a situation, we would "normally vacate the judgment and remand the action for appropriate findings to be made", 5A Moore's Federal Practice, Par. 52.06(2) and extensive list of cases there cited. In this case, a remand is not necessary since the record would not support a finding that Ceres Ranches LTD was a party to the extension agreement. Such a finding, if the trial judge had made it, would be clearly erroneous.

3. That the extension agreement did not affect Neuman's right to pay Tomlin the $25,000 on the original due date of the note has already been demonstrated. See pages 7 & 8, *supra*.

4. See comprehensive list of ways in which a contract obligation may be discharged in 15 Williston on Contracts § 1793 (3rd ed., 1967).

The most familiar application of the rule that one cannot escape one contract by making another with a third party is found in cases of sales of mortgaged property. The vendor remains liable on his promise to pay the mortgage debt notwithstanding any agreement he might make with the buyer of the property.

Neuman's final contention is in the form of a claim against Mitchell T. Curtis. Neuman says that the indemnification contract bound Mitchell T. Curtis personally rather than Mitchell T. Curtis & Co., Inc. The indemnification contract is signed:

---

"Dated: 10th of November, 1966

[Signature of Mitchell T. Curtis]

Mitchell T. Curtis
Mitchell T. Curtis & Co., Inc.
President
315 Montgomery St.
San Francisco, Calif.

Attest: Melvin H. Brown
Melvin H. Brown, Asst. Secy."

---

This signature is ambiguous. The typewritten matter beneath the signatures of Curtis could mean that Curtis signed only as an agent of the corporation. On the other hand, it could be meant to state the title and identity of Mitchell T. Curtis.

Whether a person signs an instrument as an agent or in his own right can be shown by parol evidence when the signature is ambiguous. Restatement, Agency, Sec. 323(1), pp. 714–715; Cavaness v. General Corporation, 155 Tex. 69, 283 S.W.2d 33 (1955).

The trial judge, therefore, acted properly in admitting the testimony of Neuman and Curtis on the question of whether Curtis signed as the corpora-

Another application of the rule was discussed on pages 7–9, supra. The reason a guarantor of a debt is not discharged when an extension of time is agreed upon between the creditor and a third party is that the terms of the contract guaranteed can only be changed by the parties to the contract; not by a contract by one of the parties with a third party.

5. Our review of the contention that Curtis was bound personally was also handicapped by the District Judge's failure to follow Rule 52, Fed.R.Civ.P. He made no finding that the

tion's agent or in his own right. Neuman testified that the signature was meant by the parties to bind Curtis personally. Curtis testified that the understanding between himself and Neuman was that he signed as the corporation's agent.

The credibility choice was for the trial judge. He chose to believe Curtis' testimony that his signature was made as an agent of the corporation. This factual finding was not clearly erroneous, which is the complete answer to Neuman's contention that Curtis was bound personally by the indemnification contract.[5]

The Judgment of the District Court is Affirmed.

signature on the indemnification agreement was ambiguous. However he did not exclude the parol testimony. We are therefore left to deduce that he considered the signature ambiguous.

Nor did the trial judge make a finding that the indemnification agreement was intended by the parties to bind the individual, not the corporation. However, the judge's holding that Curtis was not liable personally can lead to but one conclusion—that he believed the testimony of Curtis to the effect that the parties' agreement was that the corporation, not the individual, was bound.