## MARTIN v. HEMPHILL. (No. 274-3506.)

(Commission of Appeals of Texas, Section B. Feb. 15, 1922.)

**1. Evidence ⊗═442(1)—Oral agreements not inconsistent with writing representing part of contract admissible.**

Though in the absence of fraud, accident, or mistake, oral evidence is not admissible to contradict or vary the terms of a written instrument, where the writing represents only a part of a contract, the other parts being expressed orally, the parts not reduced to writing and which are not inconsistent with it may be shown.

**2. Evidence ⊗═459(1)—Parol evidence admissible to show who was bound by contract signed by fictitious trade-name.**

In a suit on a contract for the sale of cotton for which plaintiff gave defendant a written confirmation of contract signed "M. Bros., by Plaintiff," where the confirmation was an incomplete statement of the contract, parol testimony was admissible to show that plaintiff was transacting business at that time and place under the name of M. Bros.; such testimony being explanatory and not contradictory of the writing.

**3. Partnership ⊗═64—Person may recover on contract made under trade-name.**

Plaintiff in transacting business had a right to assume the trade-name of "M. Bros.," and, where the contract was not inconsistent with the right of recovery, could recover on a contract made under his trade-name.

**4. Partnership ⊗═63—Partnership is a contractual status.**

A partnership, at common law, is not a legal entity, but a contractual status.

**5. Banks and banking ⊗═96—Action properly dismissed as to bank whose president could not bind it by contract sued on.**

An action on a contract for the sale of cotton for future delivery against a bank and another party defendant was properly dismissed as to the bank, as the president of the bank had no authority to bind it by such contract.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by T. W. Martin against C. W. Hemphill. From a judgment of the Court of Civil Appeals affirming a judgment of the district court for defendant (221 S. W. 333), plaintiff brings error. Reversed and remanded.

Snodgrass, Dibrell & Snodgrass, of Coleman, for plaintiff in error.

W. Marcus Weatherred, of Coleman, for defendant in error.

POWELL, J. The Court of Civil Appeals gives us the benefit of a clear and accurate statement of this case, as follows:

"Appellant filed this suit against the appellees, C. W. Hemphill and the Central State Bank of Coleman, a state banking corporation, to recover damages for the breach of certain contracts for the sale of cotton by appellees to appellant. The appellees filed separate answers, and the trial court sustained exceptions of the appellee Central State Bank, which eliminated that defendant from the suit.

"The case was tried before a jury, and the court peremptorily instructed a verdict in favor of the remaining defendant, C. W. Hemphill. Judgment was rendered upon the verdict for such defendant, from which this appeal has resulted.

"Appellant's cause of action was based upon certain contracts for the purchase of cotton made at different dates during the month of September, 1917, which contracts were each evidenced by written confirmations. The confirmations were signed with the printed name, McDonald Bros., by T. W. Martin, the latter name being written. It was alleged that the confirmations were each delivered to C. W. Hemphill and accepted by him; and that, at the time of the making of the contracts and the issuing of the confirmations, appellant was engaged in the business of buying and selling cotton in the town of Coleman, in Coleman county, Tex., for himself, but was transacting business under the name of McDonald Bros. It was further alleged that these facts were well known to the defendant C. W. Hemphill. These allegations were denied both generally and specially.

"Appellant offered to prove the facts as alleged, but, upon objection by the appellee Hemphill that the proof tendered was an attempt to vary and contradict by parol the terms of written contracts, the court excluded such testimony.

"The bill of exceptions upon this point shows that appellant testified, in substance, that he resided in Coleman, Coleman county, Tex., during the cotton season of 1917–18, and had been following the business of buying and selling cotton for 15 or 20 years, sometimes buying for himself and sometimes for other people. That during the cotton season of 1916, he was engaged in buying cotton at Sweetwater, Tex., for McDonald Bros., of that place. That during the season of 1917 and 1918 he was engaged in buying and selling cotton at Coleman.

"When it was attempted to show the manner and name in which he did business during the season of 1917, objection was made, and the jury was retired. During the retirement of the jury, appellant testified that he did business at Coleman during 1917, under the name of McDonald Bros., and that he was the sole constituent member of such firm. He testified that he made the purchases in question from appellee C. W. Hemphill, and that in each instance he issued a written confirmation, which correctly stated the date, the amount, and the price and terms of the contract. The first confirmation is typical of all, and is as follows:

" 'Coleman, Sept. 8, 1917.

" 'C. W. Hemphill—Dear Sir: We beg to confirm herewith purchase from you as follows:
100 B. C. at 19⅞ B/M.
" 'Differences as follows:

Good middling.........⅜...... On
St. middling...........¼...... On
Middling .........................
St. low middling.......⅜...... Off
Low middling..........1ȼ...... Off
St. good ordinary............... Off
Spots .......................... Off same grade white
Tinges ......................... Off same grade white
" 'Terms: Oct. 15th. Reimbursement. E. & O. E.
" 'Yours very truly,    McDonald Bros.,
" 'By T. W. Martin.'

"It was also testified by appellant that he had previously had a conversation with Hemphill, concerning the use of the name of McDonald Bros. in the contracts. The substance of this testimony was that local merchants had run a garnishment against appellant's bank account, and that he suggested running the cotton account in the name of McDonald Bros., to avoid the garnishment of his funds, to which Hemphill assented.

"Appellant also testified that Hemphill never delivered the cotton upon any of these contracts, but requested an extension of time, to which he consented, provided Hemphill would pay any overdrafts created by the purchase of other cotton to fill the contracts. It was not claimed that there was any definite period of extension.

"As stated, the court excluded this testimony, and in the bill of exceptions qualified the same as follows:

" 'This suit was brought by T. W. Martin on written confirmation signed "McDonald Bros., by T. W. Martin," T. W. Martin having testified that during the season of 1916 he bought cotton for and represented McDonald Bros., which was a cotton firm engaged in buying and selling cotton. When he sought to testify that in the confirmations issued he was not acting for McDonald Bros., but for himself under the name of "McDonald Bros.," the defendant objected on the ground that the written confirmation, by the manner of its signature, showed that T. W. Martin was not signing as an individual, but as the agent of McDonald Bros., and that Martin should not be permitted to vary the legal meaning and effect of the signature and of the written instrument, by parol testimony that he was acting for himself in so signing the instrument, which objections were by the court sustained under the decision of Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764.' * * *

"The principal questions upon this appeal are whether the trial court correctly interpreted the contracts as not binding appellant as principal, but as showing that he executed the confirmations as the agent of McDonald Bros.; and whether the court correctly held that appellant should not be permitted to vary the legal meaning and effect of the signature and of the written instruments, by parol testimony that he was acting for himself in signing the same.

"It is in substance the contention of appellees that the contracts were plain and unambiguous, and showed upon their face that appellant did not execute the same for himself and as an individual, but in the capacity as agent for McDonald Bros., and that therefore parol evidence would be inadmissible to vary the meaning and legal effect of the instruments.

"Upon the other hand, it is claimed by appellant that the printed signature of the name McDonald Bros., not revealing whether it was a corporation or partnership, and, if a partnership, not disclosing the constituent members of the firm, parol evidence was admissible to show who was transacting business in that name; and that such testimony would not be contradictory, but explanatory of the written instrument.

"Both parties rely upon the case of Heffron v. Pollard, 73 Tex. 96, upon the authority of which the trial court based his ruling in excluding the proffered testimony, and in peremptorily instructing for appellee Hemphill."

The Court of Civil Appeals, also relying upon the case of Heffron v. Pollard, supra, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764, concluded that the trial court properly excluded the testimony in question and affirmed its judgment. See 221 S. W. 333.

The controlling question before us is whether or not the Court of Civil Appeals correctly held that Martin should not have been permitted to prove that he was the sole member of the firm of "McDonald Bros." We think the court erred in so holding, and that such testimony should have been admitted by the trial court. We do not think that proof would have revised the written confirmations. If not, it was clearly admissible.

[1] It is elementary that, in the absence of fraud, accident, or mistake, oral evidence is not admissible to contradict or vary the terms of a written instrument. Many Texas authorities in this connection are collated in case of Harper v. Lott Town & Improvement Co., 228 S. W. 188. That the court in the case of Heffron v. Pollard, supra, had this rule of evidence in mind is quite clear. This can be gathered from several sections of that opinion as follows:

(1) "As to the legal effect of this contract upon its face there can be no doubt. It discloses the names and relation of all the parties connected with it. It binds Fry, the principal, and does not bind Heffron, the agent. If it had said in express terms that Fry was bound by the contract and Heffron not, the meaning in the light of the law would not have been more unmistakable. Can Heffron be held liable upon this written agreement? Is it permissible in order to bind him to show by parol testimony an intention exactly contrary to that expressed on the face of the writing, namely, that Heffron was bound by it and that Fry was not bound? In our opinion this cannot be done without violating a cardinal rule of evidence."

(2) "In the present case also the name is not a fictitious one. It is the name of a real person. But the contract purports to bind him alone, and upon its face is inconsistent with the idea that the defendant in signing it may have intended to use it for his own business name."

(3) "The intention of the parties to a written contract must be derived from the writing

itself when its meaning is clear. Can it be said that the admission of parol evidence to show that the contract before us was made for the benefit of defendant [Heffron] and was intended to bind him does not violate this rule? We think not. The contract clearly shows the relation of all the parties to it, who was to be bound and who was not to be bound, and its legal effect cannot be varied by such evidence."

But there is another rule of the law of evidence which is equally elementary. It has been stated for the Supreme Court of Texas by Justice Williams in the case of *Coverdill v. Seymour*, 94 Tex. 1, 57 S. W. 37, as follows:

"It is sometimes the case that the writing represents only a part of the contract, the other parts being expressed orally, and in such cases, these parts not reduced to writing which are consistent with the writing, may be shown."

We think this is the rule applicable to the case at bar, and under which the proffered testimony was admissible.

In the case of *Heffron v. Pollard*, supra, the written contract in several instances, in its very body, bound one John W. Fry, a real person. He was fully and completely identified repeatedly. The contract was complete in itself in every detail. It nowhere mentioned Heffron as being bound. In signing the contract, Heffron executed it for John W. Fry in this language: "John W. Fry, per Heffron." Fry was a legal entity. He could sue and be sued. No explanation as to his identity was required. As said by the court in this .case, the contract itself was just as clear as if it had expressly provided that Heffron was not to be bound. So, in the case at bar, if the written confirmations had expressly provided that Martin was. not a member of the firm of "McDonald Bros.," then the testimony in question would have varied the contract and would not have been admissible. But, what do we find to be the facts in the instant case upon this point?

[2] The confirmation in suit was essentially an incomplete statement of the contract. It did not even pretend to reflect the entire agreement between the parties. It was not even signed by Hemphill. All the parties .to the suit in their pleadings set up many things outside the contents of the confirmations. In so far as they were not inconsistent with the latter they were admissible in evidence. Hemphill said it was understood that he was acting for another man and was not to be bound personally; that if he accepted the contract at all, it was only in that limited manner. There were many other parts of the contract not covered by the written confirmations.

[3] It will be conceded that Martin had the right to assume the trade-name of "McDonald Bros.," or any other name. In this connection, we quote as follows from Cyc. vol. 29, p. 270:

"Without abandoning his real name a person may adopt any name, style or signature wholly different from his own name by which he may transact business, execute contracts, issue negotiable paper and sue or be sued. Such assumed or fictitious name may be either a purely artificial name or a name that is or may be applied to natural persons."

The trade-name "McDonald Bros." does not necessarily imply that two or more persons by the name of McDonald are doing business under that name, or that the firm includes any one by the name of McDonald. In fact, a trade-name used by a partnership firm does not, prima facie, conclusively prove anything as to its constituent members. In this connection, we quote as follows from Cyc. vol. 29, pp. 419 and 420:

"At common law a partnership may be validly organized without any provision in the agreement as to the name under which it is to do business. When a firm name is fixed upon it may be the full individual name of any partner; the surnames of all the partners; or the surname of one or more of the members with the addition of '& Company;' or it may consist of individual names wholly distinct from the names of any of the members; or it may be a name purely fanciful. * * * Partnership contracts are perfectly valid when made in the firm name even though such name does not contain the names of any of the partners."

Our Supreme Court has recognized the above rules laid down by Cyc. In the very case of *Heffron v. Pollard*, supra, the court says:

"We understand the law to be that when a party for the purpose of transacting business adopts an assumed name, whether it be fictitious or the name of another, he is bound by a contract made in that name."

Upon this very point, the Court of Civil Appeals is in accord, in the instant case, with the principles of law now under discussion. That court in this very case says:

"It must be conceded that it is usually permissible for a person to assume a fictitious or artificial business name, or even the real names of other natural persons, in the making of contracts, and where the. contract is not inconsistent with such theory, a recovery may be had by the person really contracting under the assumed name."

It is quite clear that Martin had the right to do business under the trade-name of "McDonald Bros." He alleged that he was so doing business; that he and Hemphill agreed it was best to do so, because of Martin's financial condition. The allegations of the pleadings set up the whole agreement and contract between the parties. The written confirmations were silent on many of these points. One of the incomplete portions of the confirmations is the composition of the firm of McDonald Bros. The firm name ap-

pears but once in any part of the writing, and that is at the very end thereof. It appears thus: "McDonald Brothers, by T. W. Martin." The Court of Civil Appeals says that the confirmation itself clearly shows that Martin signed as agent of the firm. We cannot agree with this holding. We have tried in vain to follow that line of reasoning. Certainly, no agency is expressly shown. If he had signed it by "T. W. Martin, Agent," then it would have clearly appeared that he was so acting, or if he had signed it by "T. W. Martin, Member of Firm," the intention would have been equally clear. But, he did neither of these things. He only signed his name. It is a matter of common knowledge that firm names are frequently signed by members of the firm. When the firm name is printed, the name of some one authorized to sign for the firm is necessary, in order to attest the authenticity of the firm's signature. In our common experience, we know almost daily of instances where firm names are signed and then followed by the name of some one else who was a member of that firm. The signature shows, in such cases, that the firm's name was signed by this member of the firm. Yet it is seldom stated that he is a member of the firm. Martin, as the sole member of the firm, could have signed this instrument just as he did. It was not inconsistent with his contention as pleaded. Certainly there should be no presumption of mere agency, when one does not expressly sign as agent, and especially when the written instrument itself nowhere states anything which, even by implication, shows any such agency.

It is clear to us that the confirmations shed absolutely no light upon the composition of the firm of "McDonald Bros.," but leave the whole matter open as the subject of parol proof. As we view it, proof that Martin was either agent or sole member of the firm would be consistent with the written confirmations.

[4] Really, parol proof would be absolutely necessary in this case before McDonald Bros. could sue or be sued. A partnership, at common law, is not a legal entity, but only a contractual status. See Glasscock v. Price, 92 Tex. 271, 47 S. W. 965; Houghton v. Puryear, 10 Tex. Civ. App. 383, 30 S. W. 583. Before a suit could have been filed by or against McDonald Bros., it would have been necessary to allege the membership of said firm. Proof showing its membership would have been explanatory and not contradictory thereof. This was necessarily an open question in the case at bar, and as we view it, the evidence was clearly admissible. On the other hand, in the case of Heffron v. Pollard, supra, John W. Fry was one man, an individual, a legal entity, and no further light was necessary in his identification.

McDonald Bros. is really, in the case at

bar, a fictitious trade-name. It is true there are McDonalds at Sweetwater. There are perhaps other McDonalds in every county in Texas. But, in the instant case, it was a fictitious name, adopted by Martin and Hemphill under a mutual agreement, according to the pleadings. It is for the jury to pass upon the truthfulness of Martin's allegations. If they are true, then, if the proffered testimony in support thereof is excluded, this rule of evidence becomes the instrument and vehicle of a grave injustice in defeating contractual obligations honestly assumed. The firm name of "McDonald Bros." did not reveal who constituted such firm. Therefore parol testimony was admissible to show who was transacting business at that time and place under that name. As already stated, such testimony would not be contradictory of the written confirmation, but merely explanatory thereof.

We think if the Supreme Court which decided the case of Heffron v. Pollard, supra, had had the facts of the instant case under consideration, it would have admitted the proffered testimony in evidence. We feel justified in this assertion in view of the following quotation from the opinion in the above cause last referred to:

"If the contract had been signed in the name of Fry only it would have been proper to have permitted it to be read to the jury upon proof that defendant [Heffron] signed it, that the contract was made for his benefit, and that he assumed the name of Fry as his business name in the transaction."

If the contract had been so signed, the writing, on its face, would certainly have bound no one but Fry. Heffron's name would have appeared nowhere in the written contract. Under those circumstances, the court in that case says that Heffron would have been permitted to explain the contract by stating that he used Fry's name as a business name, and that he (Heffron) was the real party at interest. It seems to us that if such an explanation be permissible, then there could be no serious doubt as to the admissibility of testimony by Martin, explaining that he was the constituent member of the firm of McDonald Bros. Certainly one would be as much an explanation as the other, and neither apparently any more a variation of a written contract than the other. In one case, Heffron would be explaining his use of the name of another individual, entirely unlike his own; in the other, Martin would be explaining his use of a partnership, or firm trade-name, entirely foreign to his own.

As we construe the decision in Heffron v. Pollard, supra, the court there found that John W. Fry's name was used repeatedly in the very body of the contract; that his name was signed to the contract "per Heffron"; that John W. Fry, prima facie, means John

W. Fry, a definite description of a given individual; that no explanation was necessary to his complete identification; that when Heffron signed "John W. Fry per Heffron," it showed conclusively that Fry was the principal, whose name was being signed by his agent, Heffron; otherwise Heffron would have either signed his own name only after having also used it in the body of the contract, or would have been consistent all the way and used only the name of John W. Fry throughout the contract. In other words, the court held in Heffron v. Pollard that when the name of one individual is signed by another individual, and the latter's name is also signed to the contract, the latter is, as a matter of law, merely the agent of the former, and proof to the contrary is not admissible.

But, the use of an indefinite firm or partnership name is a vastly different proposition, as we view it; "McDonald Bros." does not identify a soul. It might be used by any man, or set of men. It, prima facie, conveys no meaning; when its name, in printed form, is signed to a contract, it is the usual custom for some one to attest the signature; that is done by a member of the firm as often as by a mere agent; the signing of the firm name by a member of the firm cannot be inconsistent with his membership therein; evidence explaining the constituency of the firm and his membership therein is certainly not only admissible, but generally essential. When a firm name is signed by an individual, with nothing in the contract anywhere to show whether the latter is an agent or member of the firm, the signer is just as likely to be the one as the other; we are inclined to think the law makes no presumptions, and we are certain it carries no conclusive presumption; his status is subject to proof.

We think what we have said sufficiently disposes of the issue as to the admissibility of the testimony in question. But counsel for Martin quote as follows from the case of Tinsley v. Dowell, 87 Tex. 23, 26 S. W. 946;

"The general rule is, that one who contracts as agent cannot maintain an action in his own name and right upon such contract. * * * To this general rule there are four exceptions generally recognized by the courts and text-writers: First, where the agent contracts in his own name; second, where the agent does not disclose his principal, who is unknown; third, where by the usages of trade the agent is authorized to act as owner of the property; fourth, where the agent has an interest in the subject-matter of the contract, and in this case whether he professed to act as agent or not."

In discussing the above quotation, counsel contend very vigorously that in the case at bar Martin was plaintiff, asserting certain rights in court, and not a defendant, denying liability, as in the case of Heffron v. Pollard, supra. Proceeding further in that same connection, they state:

"Now, in the case at bar the plaintiff in error alleged and undertook to prove not only that he had an interest in the subject-matter of the contracts in controversy, but that he had the sole and only interest therein; and, in view of this announcement by our Supreme Court, we respectfully submit that he was entitled to prove his case by the evidence offered upon said trial and which was excluded by the trial court, and he was entitled to make such proof regardless of whether this court holds or does not hold that by the manner of executing the contracts plaintiff in error professed to act as agent or not."

We do not think it necessary to pass upon the correctness of this contention of counsel, and we do not do so, although it strikes us as having some force. As said before, we think what we have already said disposes of this question, and that the confirmation does not, in itself, show that Martin signed as agent.

[5] We think the bank was properly dismissed from the suit by the trial court. The president of the bank had no authority to bind his principal, a state bank, to any such contract as the one pleaded by Martin. We are in complete accord with the decision of the Court of Civil Appeals upon this point, when it says:

"We hold that plaintiff's petition wholly fails to state a cause of action against the bank, for the reason that, under the pleading, such transactions were ultra vires the corporation. It was not alleged that the bank had, at the time of the making of the contracts, any cotton to deliver thereunder, or that it would in due course of business acquire such cotton as collateral to any loans made. The mere potential ability of the bank to acquire such property in the future would not, in our opinion, suffice to give it authority to make contracts of this character for future delivery. Neither would the bank be bound by custom, upon contracts of its managing officers, for the future delivery of cotton, in such circumstances. Under the pleadings, to hold the bank liable under these contracts would be, in effect, to recognize that a state banking corporation could engage in the business of buying and selling cotton for future delivery, a doctrine which this court cannot sanction."

We do not think it necessary to pass upon other contentions raised in the application, because we believe they have been effectually disposed of by what we have said in holding admissible the testimony in question. We are of the view that these questions will not now arise in such a way as to give any difficulty upon another trial of the case.

It follows, from what has been said, that we think the district court and Court of Civil Appeals erred in excluding the proffered testimony tending to show that Martin com-

posed the firm of "McDonald Bros.," and that such error requires a reversal of the judgment. In fact, the whole case turned upon that error.

Therefore, we recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and that the cause be remanded to the former for another trial in conformity herewith.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.

⊜⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes