J. D. CAVANESS v. GENERAL CORPORATION ET AL

No. A-4992. Decided October 5, 1955.
Rehearing overruled November 9, 1955.
(283 S. W. 2d Series 33)

*Wm. Andress, Jr.,* of Dallas, for petitioner.

The true party at interest in a contract, so known at its execution to the other contracting party, may maintain an action thereon regardless of the name he is actually using in making the contract. Martin v. Hemphill, 237 S.W. 550; Landa v. Whitfield, 131 S.W. 2d 310.

*Carrington, Gowan, Johnson & Walker, Wiley Johnson* and *John L. Hauler,* of Dallas for respondents.

On proposition that plaintiff has no cause of action respondent cite Heffron v. Pollard, 73 Texas 96, 11 S.W. 165; Super-Cold Southwest Co. v. Elkins, 140 Texas 48, 166 S.W. 2d 97.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The single issue at the present stage of this litigation concerns the right of our petitioner, J. D. Cavaness, to maintain individually an action upon a written agreement made by him in the name of, and as purported president of, a purported corporation, called D-A-M Company, which has actually never existed either *de jure* or *de facto*.

The agreement, dated July 17, 1946, was a license of patent rights actually then and still owned by the petitioner-plaintiff, Cavaness, but recited to belong to the purported corporation, which was also the named payee of the stipulated minimum royalties, which the petitioner-plaintiff seeks to recover. The other signatory to the agreement, or licensee therein, was General Corporation, the principal defendant below and respondent here, the additional respondents-defendant being sued as guarantors of the stipuated obligations of General Corporation.

While the agreement was elaborate in terms and couched in clear and correct legal language as a purely corporate affair, the only place in it where the petitioner-plaintiff himself appears in any manner, direct or indirect, is the purported corporate signature, which was in the usual form for such a purpose and included the signed name of the petitioner-plaintiff as "President," the acknowledgment being in the usual corporate form to correspond with the signature. There was also a final provision that "This contract covers all the agreement between the parties hereto and no oral representations will be recognized."

Contemporaneously with the license agreement there was executed and evidently attached to the latter by the individual respondent-defendant, J. W. Greenwood, an agreement on behalf of a partnership, called Southwest Company, guaranteeing performance of "the above and foregoing contract by and between D-A-M COMPANY and the GENERAL CORPORATION, as if the SOUTHWEST COMPANY had executed said contract as Licensee." Greenwood, who also signed the license agreement for General Corporation as its president, is sued along with the

other individual respondents-defendant as partners, or former partners, of the guarantor partnership.

The pleadings of the petitioner-plaintiff stated that his individual ownership of the patent rights in question was at all times well known to the respondents-defendant; that well prior to both the license agreement and the actual incorporation of the licensee, General Corporation, negotiations looking to an exploitation of the invention by interests affiliated with the respondent-defendant, Greenwood, had been conducted individually between the latter and the petitioner, it being mutually understood that, merely for convenience, the interests of the petitioner as patent owner-licensor would later be lodged in a corporation, of which the petitioner would own substantially all of the stock, and that the interests of the licensee would also be vested in a corporation; that at the time the agreements were signed, while the respondent General Corporation had in fact been organized for the Greenwood interests, and an application for a charter of the purported licensor D-A-M Company had been prepared, Greenwood and his associates well knew that the latter had not been filed; that by reason of these facts and the fact that the licensor corporation was never organized "plaintiff, as the promoter and representative thereof thereby became personally obligated under the aforesaid contract and was in truth and in fact the principal therein as was well known to the defendants."

While, as hereinafter discussed, the petitioner also bases his individual right of action upon alleged part performance by the respondents, his pleadings include no allegations in this behalf.

The defenses of the respondents included sworn pleas questioning the petitioner's individual right of action. These pleas were taken along by the court with the case on the merits.

At an early stage of the trial, the petitioner sought to introduce the license agreement in evidence, and the manifold objections thereto of the respondents were then sustained. Both at this time and previously, the petitioner also sought to introduce proof in support of his above-mentioned pleadings as to the negotiation and signature of the agreements and also evidence to the effect that, after they were signed, the respondents had partly performed them by making certain investigations about available materials with a view to operating under them. During the course of the petitioner's efforts to introduce this evidence

after the ruling on the agreement, counsel for the respondents stated that the proffered proof and any more that might be forthcoming would be immaterial in the light of the ruling and urged the court to discharge the jury and forthwith render judgment in their favor. This the court did, at the same time assuring protesting counsel for the petitioner (as did also counsel for the respondents) that he would be allowed "a full bill" of exception concerning the evidence.

This judgment was affirmed by the Court of Civil Appeals. 272 S.W. 2d 595. The original opinion, by one of the Associate Justices, reasoned that the petitioner was barred by his own breach of the agreement in failing to cause the licensor corporation to be organized and also was estopped from suing individually and thus denying the recited existence of the corporation. On rehearing, the Chief Justice took the position that, particularly in the light of the stipulation against parol representations, the petitioner was foreclosed from his personal action by the Parol Evidence Rule. The third Justice simply voiced concurrence in the result.

The evidence for the purposes of the above-mentioned bills of exception was never properly developed and the trial court by qualification declined to treat it as if it had been. However, the proceedings in connection with the rendition of judgment were of such summary character, and the statements of the court and respondents' counsel so broad as to what the petitioner might have in the way of bills, that we feel justified in assuming that the petitioner would have supported his allegations as to the knowledge of the respondents and other circumstances attending signature of the agreements, as well as what the statement of facts indicates he intended to prove concerning partial performance on the part of the respondents. Notwithstanding these assumptions, we have concluded on oral argument and further study of the briefs, that the writ was improvidently granted, and that the judgments below against the petitioner should be affirmed.

■ But for the effect, if any, of the petitioner's proffered proof *dehors* the written agreement, he obviously could no more maintain this action than could X recover royalties from Y by merely proving a contract of Y to pay royalties to Z and Y's failure to perform. Without the writing there is no obligation of anybody to pay royalties to anybody. With the writing alone, there is a purported obligation of General Corporation to pay, but to pay only an existing corporation called D-A-M Company, of which

one Cavaness happened to be the president with no personal interest in the matter. With the writing and the proffered proof together the intended effect is necessarily to utilize the written agreement in so far as it establishes the obligation of the licensee to pay but, at the same time, to vary it by substituting for the payee-licensor corporation its purported president, making the latter individually the principal in the arrangement in which the writing shows him to be merely an officer-agent of the principal.

Unless the corresponding part of the writing be disregarded in favor of the proffered parol testimony, the position of the petitioner is not that of a disclosed principal nor undisclosed principal nor the promoter of a corporation to be formed, but more nearly that of a disclosed agent seeking to show that his written "disclosure" is false and that he is in fact the principal. We think the Chief Justice below was right in the view that the petitioner's position conflicts with the Parol Evidence Rule, and this even without invoking the "no oral representations" clause.

■ While that Rule is probably more often applied in the area of what is to be done or not done under the corresponding writing, it may also be applied in the area of who is to be bound or not bound. It is no less reasonable or more legalistic to forbid a party to a writing to prove that he was not to be considered merely the agent the writing agreed that he was than it is to forbid proof varying the writing in some other regard. In either instance the well-known remedy of reformation is available in cases of fraud or mutual mistake, if recourse to it is sought, as was not done here.

In the chapter "Liability of Agent to Third Person," the Restatement, Agency, Sec. 323 (pp. 714-15) states:

"(1) If it appears unambiguously in an integrated contract that the agent is a party or is not a party, extrinsic evidence is not admissible to show a contrary intent, except for the purpose of reforming the contract.

"(2) If the fact of agency appears in an integrated contract, not sealed nor negotiable, and there is no unambiguous expression of an intention either to make the agent a party thereto or not to make him a party thereto, extrinsic evidence may be introduced to show the intention of the parties.

"(3) If the fact of agency does not appear in an integrated

contract, an agent who appears to be a party thereto may not introduce extrinsic evidence to show that he is not a party, except:

"(a)   for the purpose of reforming the contract; or

"(b)   to establish that his name was signed as the business name of the principal and that it was so agreed by the parties."

Applying the foregoing to the situation of "an agent purporting to make a contract with another for a principal whom both know to be nonexistent," Sec. 326 states that "unless otherwise agreed, the agent is a party to such a contract," but goes on to explain in its Comment b., "Parol evidence," that:

"As stated in Sec. 323, if it appears unambiguously in an integrated contract that the agent is not a party, parol evidence is not admissible to show the contrary intent *and,* except in the case of a negotiable instrument, *this is so although the effect of the evidence is to show that the purported principal is nonexistent."* (Emphasis supplied.)

Under the general subject of suit by an agent in his own name on behalf of the principal against the other party to the contract, Comment f. to Sec. 364, reads:

"Parol evidence rule. If there is but one contract and this is integrated, the determination of whether or not the agent is a party thereto may be affected by the parol evidence rule. Thus, if in the integrated document it unambiguously appears that the agent is or is not a party, an extrinsic agreement to the contrary between the agent and the other party cannot be shown except for the purpose of reformation or rescission (see Sec. 323, which states the same rule as applicable in suits brought against the agent.) * * * * "

■  The Restatement, of course, recognizes (Sec. 372) the undoubted rule that a person, who has a personal interest in the subject matter of a contract, which he has made as agent of even a disclosed principal, may maintain an action in his own name and for his individual benefit on the contract. See also Tinsley v. Dowell, 87 Texas 23, 26 S.W. 946; Scott v. Louisville & N. R. Co., 170 Tenn. 563, 98 S.W. 2d 90. And, as indicated by the Tinsley case, the petitioner's ownership of the patent rights in the instant case would be the kind of personal interest contemplated by the rule. But Comment b. under Sec. 372 contains the qualification " * * * unless the purported agent is excluded by

the terms of the contract * * *," which phrase we regard as but another reference to operation of the Parol Evidence Rule, as in the cases of actions against the agent and actions by the agent in his own name for the benefit of the principal.

We see no reason why the Rule should not apply in the one case as in the others, and while we know of no Texas decision so declaring, neither do we know of any holding to the contrary. Martin v. Hemphill, Texas Comm. App., 237 S.W. 550 (hereinafter further discussed) expressly forebore to decide the point. 237 S.W. 554.

■ The Rule was applied to actions against the agent in Heffron v. Pollard, 73 Texas 96, 11 S.W. 165, a suit against Heffron upon a written sales agreement purportedly made by the plaintiff seller with one John W. Fry, as buyer, and signed "John W. Fry per Heffron," it being shown by parol evidence that, while a John W. Fry existed, Heffron was actually the agreed principal. It was held that " The contract clearly shows the relation of all the parties to it, who was to be bound and who was not to be bound, and its legal effect cannot be varied by such evidence."

The same decision appears to us to establish that a writing such as that in the instant case reflects the status of the purported agent (petitioner) as a nonparty with sufficient clarity to make the Parol Evidence Rule applicable to proof tending to establish that he is a party. Certainly a person recited and acknowledged as acting merely as a corporate officer is no more likely to be contracting for himself personally than is one recited to be acting as agent for another individual. The elaborate instant writing, with its corporate acknowledgment, and lacking any individual acknowledgment, thus perhaps even more clearly excludes the petitioner as a party than did the brief and unacknowledged agreement in the Heffron case.

Largely relied on by the petitioner in this Court is Martin v. Hemphill, supra, an action by Martin for breach of Hemphill's agreement to sell certain cotton as evidenced by a brief written confirmation directed to Hemphill and signed "McDonald Bros. By T. W. Martin." The action was held maintainable and on the basis of parol evidence showing that, by agreement between the two men, and in order to avoid interference by Martin's creditors, the name "McDonald Bros." (the same as that of an actual firm operating in the same area) was used to cloak Martin's identity as the actual principal.

The opinion is largely devoted to distinguishing Heffron v. Pollard, supra, which was evidently regarded as sound law. The distinction urged by Martin was that he had an actual interest in the subject matter of the agreement and could thus, under the rule for actions by the purported agent for his own benefit, show this to be the fact despite the Parol Evidence Rule, but, as above stated, the court, while characterizing the suggestion "as having some force," expressly declined to pass on it. The basis of the *court's* distinction was that the writing before it, including the signature, was essentially incomplete; for example, the nature of "McDonald Bros." as a partnership, trade name, corporation or otherwise being patently obscure and thus necessarily subject to explanation. If the Martin case is thus different from Heffron v. Pollard, as it evidently is, it is surely no less different from the instant case, wherein the status of the purported principal as a corporation and of the petitioner as its representative is clear beyond cavil.

Thus the answer to the petitioner's rhetorical question, "* * * if Martin could show by parol that he was the sole member of McDonald Bros. why can't Cavaness show * * * that he was the sole member of the D-A-M Company?", is that the name as used in one agreement is inherently ambiguous and as used in the other quite unambiguous.

The same distinction applies to the petitioner's cited case of Weeks v. San Angelo National Bank, Texas Civ. App., 65 S.W. 2d 348, wr. of er. refused, in which the defendant Weeks, who had signed a note to the plaintiff bank "Weeks Drug Store No. 4, by Jno. A. Weeks" was allowed to introduce evidence of an agreement that a corporation to be organized under the name "Weeks Drug Store No. 4, Inc." was to be the party liable on the note.

The other cases cited for the petitioner are, like the Weeks case, adequately disposed of by the opinion of the Chief Justice below.

■ We add that there is nothing special in the law concerning corporations and their promoters which would entitle the petitioner to maintain this suit merely because the agreement was purportedly that of a corporation. The Parol Evidence Rule is not limited by the law of corporations, and it is not extreme to regard a promoter as but a kind of agent who contracts for a corporation to be formed. Where an individual contracts in writing as the purported act of an existing corporation with

himself as president, he can no more prove by parol an understanding that he was contracting for a future corporation, or one at his option for himself *or* a future corporation, than an understanding that he individually was the real contracting party where the writing unambiguously shows him to be acting as agent for an individual principal. The subject matter of Sec. 326 of the Restatement, supra, evidently includes corporations, and its Comment b., above quoted, evidently refers to nonexistent corporations as well as nonexistent individuals.

■ The foregoing refers only to the proffered parol proof as to understandings, or implied understandings, prior to or contemporaneous with the agreements in suit, the Parol Evidence Rule not necessarily being applicable to the evidence as to the investigations and corresponding expenditures made by the respondents subsequent to the agreements.

As to the latter, however, we fail to see how it affects the matter, even should we concede the petitioner's failure to plead it to be immaterial. Its effect is not to suggest either an estoppel in favor of the petitioner or modification of the written agreement by repetition of the alleged earlier parol understandings about who were the actual parties to it or anything else affecting the position of the petitioner individually as regards the agreement. No authority has been cited us to the contrary.

The error, if any, of the trial court in rendering judgment in rather summary fashion, as he did, was harmless under the circumstances. The petitioner has not contended that he would have otherwise proved anything substantially different from what we have assumed that he did prove.

The judgment of the Court of Civil Appeals affirming that of the trial court is itself affirmed.

Opinion delivered October 5, 1955.

Rehearing overruled November 9, 1955.