**Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

**v.**

**DAY AND ZIMMERMANN, INC., Appellee.**

**No. 12098.**

Court of Civil Appeals of Texas, Austin.

Jan. 16, 1974.

Rehearing Denied Feb. 6, 1974.

John L. Hill, Atty. Gen., Larry F. York, J. H. Broadhurst, Gordon C. Cass, Lewis A. Jones, Asst. Attys. Gen., Austin, for appellants.

Charles J. Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, William S. Sessions, U. S. Atty., Hugh P. Shovlin, Asst. U. S. Atty., Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., for appellee.

O'QUINN, Justice.

In this case Day and Zimmermann, Inc., seeks to recover sales taxes paid under protest to the Comptroller of Public Accounts on materials procured by the corporation for use at the Lone Star Army Ammunition Plant in performance of its contract with the United States Government.

Under its prime contract with the United States, Day and Zimmermann since May of 1951 has operated the Lone Star plant,

near Texarkana, where the company loads, assembles, and packages ammunition and component items for the U. S. Army.

The controlling question is whether Day and Zimmermann in all phases of its performance acted as an independent contractor, including the procurement of materials, under circumstances making it liable for the sales taxes, or, in such procurement, acted as agent of the United States, so as to excuse the company from payment of the taxes.

The trial court entered judgment awarding Day and Zimmermann recovery of $112,668.42 in taxes, with interest, and the sum of $2,516.59 as interest on $15,848 in taxes erroneously collected by the Comptroller in 1969 and later refunded.

We will affirm in part and reverse in part the judgment of the trial court. With respect to that part of the judgment reversed we will render judgment that appellee take nothing.

The taxes involved in this lawsuit were arrived at by the Comptroller through an audit for the period beginning April 1, 1964, and ending October 1, 1968, after which the Comptroller made a deficiency determination in the aggregate amount of $128,516.42. Following a hearing upon request of appellee, the Comptroller upheld the determination and denied claim for refund, except with respect to tangible personal property procured by appellee from the United States General Services Administration in the amount of $15,848.00. Appellee in this lawsuit seeks refund of the additional amount of $112,668.42 and recovery of interest on the sum refunded by the Comptroller after the hearing.

The parties stipulated that for the period of the audit Day and Zimmermann operated the Lone Star plant under a contract with the United States dated May 1, 1951. All of the land, consisting of 15,640 acres, and all buildings and other structures comprising the Lone Star plant, a military installation under command of a military of-ficer, are wholly owned by the United States. Under the prime contract, appellee's main function is to load, assemble, and package ammunition and its component parts, the entire production being dedicated exclusively to the United States. Appellee is compensated on a "cost plus award fee" basis. Appellee also performs work involving maintenance, modification, and modernization of the plant and facilities, for which no additional fee is paid except as reimbursement for costs incurred in this work.

The prime contract provided that Day and Zimmermann would operate the Lone Star plant ". . . as an independent contractor and not as an agent of the Government." The Comptroller contends on appeal that appellee conducted itself as an independent contractor in the procurement of the goods upon which the sales tax is claimed and did not acquire the property as an agent of the United States. The Comptroller urges, under three points of error, that Day and Zimmermann was the consumer-user of the purchases and therefore liable for the tax; that appellee was the buyer in direct sales between appellee and the vendors; and that the goods purchased were not resold to the United States.

Under the prime contract Day and Zimmermann was responsible for procurement of all materials, supplies, equipment, and services required in performance of the contract which were not furnished by the United States. The contract provided that ". . . title to all property furnished by the Government shall remain in the Government" and, further, that ". . . title to *all property purchased by the Contractor [appellee], for the cost of which the Contrator is entitled to be reimbursed as a direct item of cost under this contract, shall pass to and vest in the Government upon delivery of such property by the vendor.*" (Emphasis supplied) The parties stipulated that the "cost of all items of tangible personal property on which tax was imposed in the audit was reimbursed to Plaintiff [Day and Zimmermann, appellee]

by the Government as a direct item of cost under the Prime Contract."

In payment of costs in operation of the Lone Star plant the United States dealt with Day and Zimmermann through the Government's agents designated "Contracting Officer's Representatives." The parties stipulated that as costs were incurred in performance of the contract, appellee submitted to the Government agents vouchers requesting payment for costs, and that appellee was entitled to request payment for costs incurred without having itself disbursed funds for such costs prior to submitting a voucher to the Government. In the normal course of business the vouchers were supported by a listing of checks written in advance by appellee, or by a statement of costs incurred but with respect to which checks had not been written at the time of submitting the voucher.

Usually, United States Treasury checks in payment of vouchers were received by appellee on the day the vouchers were submitted, and on the same day were deposited by appellee to the account used by the company to pay for goods purchased under the contract. Checks listed by appellee with vouchers submitted to the Government were not released by appellee to the vendors until after the United States Treasury check had been received and deposited by appellee to the account used for paying the vendors.

Day and Zimmermann submitted vouchers to the Government agents on an average frequency of two or three times each week during the audit period, and the parties stipulated that in no instance was a voucher rejected in whole or in part by the United States for reason of improper submission of claim for payment.

When property was delivered by a vendor, it was subjected to inspection and, if accepted as in compliance with the purchase order, the property was identified promptly whenever feasible by markings designating it "US LSAAP," (United States—Lone Star Army Ammunition Plant). Expendable supplies and items subject to damage by such markings were not so identified. Under terms of the contract Day and Zimmermann was required to maintain an inventory of all property located at the Lone Star Plant and to pursue a program of maintenance, repair, protection, and preservation of the property. But appellee was not held responsible financially in event of loss, destruction, damage, or wear beyond repair of plant equipment unless lost, destroyed, or damaged directly through the willful misconduct or lack of good faith on the part of a major official of Day and Zimmermann. Appellee did not maintain hazard insurance or any other type of insurance covering loss or damage to property located at the Lone Star Plant.

The Comptroller urges that Day and Zimmermann was, as stated in its contract with the United States, an independent contractor in all phases of its performance, including the purchase of goods and materials required for use in fulfilling the terms of the contract. The Comptroller also insists that, in procuring and furnishing materials and supplies necessary to complete the work specified in the contract, Day and Zimmermann was legally obligated to pay for the goods upon which the sales tax was applied.

Article 20.01(K)(1)(a) of the Texas Limited Sales, Excise and Use Tax Act (Chapter 20, Title 122A, Taxation-General, Vernon's Anno.Tex.Civ.Sts., V.A.T.S.), defines "sale" under the Act:

" 'Sale' means and includes any transfer of title or possession, or segregation in contemplation of transfer of title or possession, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration."

Article 20.021(A) directs the retailer to add the sales tax to the price of the goods sold, and provides that "when added the tax shall constitute a part of the price, shall be a debt of the purchaser to the re-

tailer until paid, and shall be recoverable at law in the same manner as the purchase price."

Article 20.02 fixes the rate for the sales tax, and Article 20.03 levies an excise tax "on the storage, use or other consumption . . . of taxable items purchased . . . at the same percentage rate as is provided in Article 20.02 . . . on the sales price of the taxable item . . ." Taxable items "means tangible personal property." (Article 20.01(W))

Under Article 20.031(A) "Every person storing, using or otherwise consuming . . . taxable items purchased from a retailer . . . is liable for the tax. His liability is not extinguished until the tax has been paid to this State . . ." except when the purchaser is relieved under conditions not involved in this case.

All purchases by Day and Zimmermann were effected under purchase order forms purporting to make the transaction one between Day and Zimmermann and the vendor without involvement of the United States as a party. Each form bore the heading, "Day & Zimmermann, Inc., Lone Star Division, Texarkana, Texas, 75502," with a recitation at the bottom of the form that "This purchase order is issued under the terms and conditions contained in this sheet, the 'Terms and Conditions' sheet . . . attached, and all printed, stamped or written matter affixed . . ." The form further recited, "All goods or services purchased on this order are for the exclusive use of the U. S. Government."

The "Terms and Conditions" referred to in the form were a part of the prime contract between Day and Zimmermann and the United States, and a copy of the terms and conditions were attached to each purchase order. Among the provisions of the terms and conditions were the following, in brief:

"All rights and claims of every kind and nature, including the *right to title and ownership of the goods* or services *covered by this Purchase Order*, may be assigned and transferred by Day and Zimmermann, Inc. to the United States Government; however, this Purchase Order *does not bind or purport to bind the United States Government or any officer thereof.*" (No. 2) (Emphasis supplied)

*"Title to goods purchased hereunder shall pass to the Buyer* [Day and Zimmermann] *on acceptance thereof.* However, all such goods are subject to inspection by Buyer and the Contracting Officer [for the United States] at the designated delivery point within a reasonable time after arrival and Buyer reserves the right to reject any goods which do not pass such inspection." (No. 9) (Emphasis supplied)

"This Purchase Order, upon Seller's acceptance hereof, *shall be a final and binding contract between the parties* and shall be construed in accordance with laws of the State of Texas. This *Purchase Order constitutes the only agreement between Buyer and Seller* . . ." (No. 23) (Emphasis supplied).

The parties stipulated that "Buyer" as used in the Terms and Conditions referred to Day and Zimmermann and that "Seller" meant any vendor to which a purchase order was addressed by Day and Zimmermann.

Day and Zimmermann contends that although ". . . the appellee has been designated as an independent contractor for the massive operation of . . . [the Lone Star Plant], it seems clear that with respect to the narrow area of procurement the Government has merely delegated to the appellee the role of procuring for the Government all material required for the operation of the facility and that *the procurement results in sales directly to the United States.*" (Emphasis supplied) If sales were directly to the United States, and not to Day and Zimmermann the sales were exempt from the tax under Article 20.04(C) and (H).

The Comptroller contends that Day and Zimmermann was an independent contractor in procurement of the materials and supplies, and that in making purchases from vendors of the taxable goods Day and Zimmermann, not the United States, became bound by its purchase contracts. The Comptroller relies on the authority of Alabama v. King and Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941), and the companion case, Curry v. United States, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9 (1941).

■ These cases hold that if a contractor, in purchasing material to be appropriated to its contract with the Government, is not an agent of the Government, the contractor may not be relieved of the tax, to which he would otherwise be subject, by reason of the fact that the contract is with the United States. Because the tax is "passed on economically by the terms of the contract or otherwise as a part of the construction cost to the Government," the Constitution does not prohibit the tax upon the Government contractor. (314 U.S. 18, 62 S.Ct. 49)

In the *Alabama* case it was argued before the Supreme Court of the United States that title passed to the goods bought when shipped, and the Government pointed to the "very extensive control . . . over all purchases made by the contractors." The controls exercised under that contract were very similar to the controls exercised by the United States in its contract with Day and Zimmermann. (314 U.S. 13, 62 S.Ct. 47) But the Supreme Court rejected the argument: "From these circumstances it [the Government] concludes that the Government was the purchaser. The necessary corollary of its position is that the Government, if a purchaser within the taxing statute, became obligated to pay the purchase price."

The Supreme Court held that the contractors "were not relieved of liability to pay the tax either because the contractors in a loose and general sense were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors." (314 U.S. 12, 62 S.Ct. 47.)

The Supreme Court further stated, ". . . however extensively the Government may have reserved the right to restrict or control the action of the contractors in other respects, neither the reservation nor the exercise of that power gave to the contractors the status of agents of the Government to enter into contracts or to pledge its credit. [Citing cases] It can hardly be said that the contractors were not free to obligate themselves for the purchase of material ordered. The contract contemplated that they should do so and that the Government should reimburse them for their expenditures. It is equally plain that they did not assume to bind the Government to pay for the lumber by their order, approved by the Contracting Officer, which stipulated that it did not bind or purport to bind the government. The circumstance that the title to the lumber passed to the Government on delivery does not obligate it [the Government] to the contractor's vendor under a cost-plus contract more than under a lump sum contract." (Citing cases) (314 U.S. 13–14, 62 S.Ct. 47.)

■ The language of the Supreme Court in Alabama v. King and Boozer has equal application to the facts of the case on appeal. In both cases the contractor dealt with the vendor in the capacity of a principal and not as an agent. Although in both cases the contractor put the vendor on notice that the goods being purchased were to be used in a Government contract, in each instance the vendor was advised that the purchase did not bind the United States. In this case Day and Zimmermann advised its vendors that title to the goods bought passed to Day and Zimmermann and that upon acceptance of the purchase order a final and binding contract, to be

construed under the laws of the State of Texas, existed between Day and Zimmermann and the vendor. Only the first and second copies of the purchase order were sent to the vendor, the second copy to be signed by the vendor and returned to Day and Zimmermann. The third copy of the order, on which space was provided for the contracting officer to approve the order, was not sent to the vendor.

Day and Zimmermann challenge the position of the Comptroller that "appellee must be able to bind the credit of the United States or that the vendor must be able to look to the United States for payment before the procurement by appellee may constitute direct sales to the Government." Appellee argues, "Indeed, Texas law permits an agent, acting on behalf of a disclosed principal, to limit the principal's liability." Appellee relies on Heffron v. Pollard, 73 Tex. 96, 11 S.W. 165 (1889), and insists, "Essentially this is what occurs here . . ." because the purchase orders provided that the goods being acquired were intended for the exclusive use of the Government and the terms and conditions attached to the order recited that the purchase order would not bind the United States.

▪ We understand the principle of agency announced in Heffron v. Pollard to be that in order to recover on a written contract, made in the name of a principal, signed in that name by another as the principal's agent, parol evidence is inadmissible to show that in signing the agreement the person purporting to sign as agent signed the name of the principal for his own benefit and with intention to bind himself. (11 S.W. 166)   Cavaness v. General Corporation, 155 Tex. 69, 283 S.W.2d 33, 38 (1955).

The Government was not a party to the purchase contracts made by Day and Zimmermann. Disclosure that the goods bought were intended for the exclusive use of the United States did not make the Government a principal, nor did Day and Zimmermann thereby become an agent of the United States. The further recitation under the terms and conditions that the purchase order did not bind the United States made clear the fact that the Government was simply not a party to the contract.

To accept the contention of Day and Zimmermann that "title to all the property upon which the tax was imposed vested in the United States directly from the vendor . . . with the appellee merely being delegated the responsibility of handling the mechanics of procurement" requires that the contract between Day and Zimmermann and each of its vendors be disregarded as meaningless and without any purpose or effect. We hold that under the facts Day and Zimmermann made explicit contracts with its vendors under which Day and Zimmermann acquired title, however fleeting, and bound itself under the laws of the State of Texas to pay the vendors for the materials acquired to be used exclusively for the Government contract.

In 1953 the Supreme Court reviewed the basis for the decision in Alabama v. King and Boozer and distinguished the contract there involved from one under which purchases were made by the Government, with the Government accepting the obligation to the vendor for the purchase price, but with the contractor handling all payments on behalf of the Government. Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546, 555.

We have considered all of appellee's counterpoints and all contentions there presented are overruled.

Under the stipulations and pleadings it appears that Day and Zimmermann sought to recover refund of $112,668.42 in taxes, together with penalty and interest paid by it from March 6, 1969, including interest on $15,848 which it was stipulated the Comptroller refunded on October 28, 1971, following a hearing on the deficiency determination.

**952**

The trial court entered judgment awarding recovery of $112,668.42 with interest from March 6, 1969, and further decreed that Day and Zimmermann recover the sum of $2,516.59 "representing interest at the rate of six percent (6%) per annum from March 6, 1969 to October 28, 1971 upon the sum of . . . [$15,848.00] in taxes erroneously and illegally collected" by the Comptroller and later refunded.

To this judgment, entered May 25, 1973, the Comptroller excepted and gave notice of appeal. On appeal the Comptroller presents no point of error directed to the latter part of the trial court's judgment, but prays that this Court reverse the judgment of the trial court and render judgment that appellee "take nothing by reason of this suit." Neither appellant nor appellee has made argument or presented authorities pertaining to the trial court's award of interest on the $15,848 in taxes refunded to appellee by the Comptroller. The parties on appeal confine the issues to that part of the judgment awarding recovery of $112,668.42 in taxes with interest from March 6, 1969.

We have discovered no fundamental error or other basis upon which to consider the latter part of the trial court's judgment. We assume that the Comptroller did not elect to appeal from that part of the judgment, or elected to waive objection by failure to present the point on appeal. Rules 373, 418, Texas Rules of Civil Procedure.

That part of the trial court's judgment awarding recovery by appellee of $112,-668.42 in refund of taxes, with interest from March 6, 1969, is reversed, and judgment is rendered that appellee take nothing by its suit for refund of such taxes. The latter part of the judgment awarding $2,516.59 as interest on refund of $15,848 is affirmed.

The judgment is in part affirmed and in part reversed, and as to that part of the judgment reversed, judgment is here rendered that appellee take nothing.